JOHN ROBERTS, *et al. vs.* SALISBURY, *et al.*—*December,* 1831.

An implied lien for the purchase money of land where the vendor has parted with the legal title, will not be enforced against a subsequent purchaser, without notice.

The vendor of land who parted with the legal title, and took a mortgage of the same land from his vendee, which he neglected to record in due time, cannot enforce his mortgage against a subsequent purchaser from the vendee, without notice.

An answer flatly denying an allegation in a bill, can only be overruled by the positive testimony of two witnesses, or of one aided by pregnant circumstances—such circumstances standing alone, without the aid of positive testimony, will not destroy the effect of an answer.

Upon a bill to record a mortgage against subsequent purchasers charged with notice, the chancellor, when the case stood ready for hearing, said in his remarks preparatory to the order appealed from, " I am satisfied that the defendants must be considered as purchasers with full notice of the vendor's (the complainant's) lien, and of the mortgage which had been given to secure the payment of the purchase money, and that under the one or the other the land was bound," but passed no order directing the mortgage to be recorded. The order passed in the cause, only referred the case to the auditor, with the usual directions to receive further proof, and state an account. HELD, that nothing had been done conclusive upon either the chancellor or the parties—no question of right had been settled, and that an appeal would not lie at that stage of the cause.

APPEAL from the Court of Chancery.

On the 1st February, 1814, the appellees, *James Salisbury* and others, the heirs and representatives of one *Andrew Black*, filed their bill against *John Roberts, Isaac G. Roberts*, and *John Gooding*, the appellants, alleging, that the said *Andrew Black*, and one *Thomas Black*, both deceased, were in their life-time seized, and possessed as tenants in common, of a certain tract of land in *Cecil* county. That being so seized, the said *Andrew*, on the 8th October, 1808, sold and conveyed his interest in said tract, to *John Roberts*, as will appear by a copy of the deed, exhibited with the bill; and that *Roberts*, for the purpose of securing to the vendor the payment of the purchase money, duly executed and acknowledged a deed of mortgage of the same land to him, on the same day, as by reference to a copy thereof exhibited, will be seen. That soon after the execution of the mortgage, the said *Black* died, and that a contest arose, and continued for a considerable space of time, as to the right to administration on his estate, by reason

whereof, the time limited by law for the recording of said mortgage was suffered to pass by, without its being done. That suits were instituted against the purchaser, on the bonds which he had given for the purchase money, upon which judgments were rendered at April term, 1812. That after the suits were brought, and shortly before the judgments were rendered, the said *Roberts* conveyed all his interest in the said lands, to his brother *Isaac G. Roberts*, of the city of *Baltimore*, which conveyance, the complainants charge to have been made without a valuable consideration, and to prevent the said land from being taken in satisfaction of said judgments; the said *Isaac G. Roberts*, being at the time beyond sea. That *John* and *Isaac G. Roberts* have since united in a deed of the same lands to *John Gooding*, the other appellant, and the complainants allege, and believe, that the said *Isaac G. Roberts* and *John Gooding*, at the respective periods, when the deeds were executed to them, well knew, that a mortgage had been given by said *John Roberts*, of the same land, to *Andrew Black*, and that the purchase money therefor had not been paid; and they further charge, that no valuable consideration passed from *Gooding* to the grantors. The bill then alleges, that but a small part of the purchase money had been paid to *Black*. *Prayer.* That the mortgage may be directed to be recorded, to have the same effect, as if it had been enrolled within the time required by law; and that the deeds from *John* to *Isaac G. Roberts*, and from *John* and *Isaac G. Roberts*, to *John Gooding*, be declared null and void; and for general relief.

The answer of *John Roberts*, after alleging that he had made to *Black*, sundry payments, on account of said land, asserted, that in the years 1808, 1809 and 1810, he became largely indebted to *John Gooding*, and respondent's brother *Isaac G. Roberts*, for merchandise, and responsibilities, which they had from time to time furnished, and assumed for him. That his debt to *Gooding* was upwards of $4000, and to *Isaac G. Roberts*, exceeding $2000, and

that the debt to *Gooding* was guarantied by his brother; he the respondent having promised to indemnify him for his advances and engagement to *Gooding*. That in fulfilment of this promise, on the 24th March, 1812, during his brother's absence from the *United States*, he conveyed to him the land, which respondent had purchased from *Black*, and not for the purpose of evading the payment of the judgments, which complainants were about to get. The answer denies, that *Gooding*, and *Isaac G. Roberts*, had at that time, any knowledge, so far as he is informed, of his, the respondents, having executed a mortgage of said lands to *Black;* on the contrary, he charges it as matter of belief, that they had no knowledge whatever on the subject, until sometime after the execution of his deed to *Isaac G. Roberts*, and the joint deed from *Isaac G. Roberts* and himself to *Gooding*.

The answer of *Isaac G. Roberts* stated, that upon the promise of his brother *John* to idemnify him, he consented to become his (*John's*) security, to various merchants in *Baltimore*, with whom he had dealings to a considerable amount; and also guarantied *John Gooding* for any credit he might procure for said *John Roberts*. That in this way the said *John* became indebted to him in a sum exceeding $2000, and placed him under a responsibility to *Gooding*, for upwards of $4000. That whilst the defendant was on a voyage to *Europe*, in 1812, the said *John*, in compliance with frequent promises to that effect, conveyed to him the land, which he *John*, had purchased of *Black*, and he positively denies any knowledge before, or at the time of the execution of said deed, and for a considerable time afterwards, of any claim by way of mortgage, or lien of any kind outstanding, or in execution. And knowing that said conveyance was made principally for the use and benefit of *Gooding*, he proposed to him, that if he would release this defendant from his aforesaid liability, he would convey the said land to him, and upon *Gooding* consenting to do so, he and his brother *John* united in a deed bearing date

5th June, 1812, by which the whole interest in the said land was conveyed to *Gooding*. The defendant then avers, that the first knowledge he ever had of the mortgage to *Black*, was derived from *Gooding*, a considerable time after the date of the last mentioned deed, when *Gooding* had gone to *Cecil* county, for the purpose of forbidding a sale of the land, which it was understood the representatives of *Black* were endeavoring to make.

The answer of *Gooding*, after stating the amount of his advances and liabilities for *John Roberts*, (in which it corresponds with the other answers,) and also the responsibility of *Isaac G. Roberts* over to him, proceeds to say, that it was not until some time after the execution of the deed of *John* and *Isaac G. Roberts* to him, that he had any knowledge whatsoever, that the mortgage to *Black* had been executed by *John Roberts*, or doubted, but that the said *John* had an unquestionable, legal, and equitable title to said land. The defendant denies, that at any time prior to the date of the deed to him, he had any notice from *Andrew Black*, the representatives of *Andrew Black*, or any person on their behalf, that they had any legal title, or equitable claim, or lien on said tract of land ; nor did he know, that his title to the same, would be contested by those representatives, until long subsequently, when an attempt was made by them, to sell it under their judgment against *John Roberts*.

A commission issued by consent to take proof.

*Nathan Baynard,* a witness examined on the part of the complainants, proved, that subsequently to the 5th June, 1812, and when he was in pursuit of the sheriff, for the purpose of having the lands in the proceedings mentioned, located, in order to sell them in satisfaction of the judgments against *John Roberts,* he (the witness being the plaintiff's agent) met with *John Gooding*, with whom he had a conversation to the following effect. " The witness mentioned the subject of the *fieri facias* to said *Gooding*, who insisted he had a right to secure the money due him

from *Roberts.* The deponent then observed, it would be a great hardship for the heirs to lose the purchase money of this land; inasmuch as he, *Gooding*, had not trusted *John Roberts* on the faith of it. Deponent also mentioned, that he had then in his possession that, which would secure the money, if he failed with the *fieri facias.* *Gooding* asked what it was, and this deponent told him it was a mortgage deed, to which *Gooding* replied, it was of no value, he did not care for it, and had the opinion of the best counsel in the state, that it was good for nothing. After some further conversation, deponent asked him if he had not a knowledge of the mortgage deed. He did not immediately give a direct answer, and deponent then inquired of him again, if he did not know of the existence of the mortgage deed. *Gooding* answered that he did." It was also proved, that *Gooding* was the uncle of *John* and *Isaac G. Roberts*, and that from the year 1808 to 1812, the mortgage from *John Roberts* to *Black*, was a good deal talked of in the county in which the land lies, and at the house of *John Roberts*, where *Isaac G. Roberts*, within the aforesaid period, was frequently seen.

BLAND, chancellor, on the 23d November, 1829.

This case standing ready for hearing, and having been by the agreement filed on the 20th inst. submitted without argument, the proceedings were read and considered.

It appears that the late *Andrew Black* and *Thomas Black*, being seised in fee, as tenants in common of a certain tract of land, *Andrew Black* sold and conveyed his undivided interest in it, to the defendant, *John Roberts*, and on the same day took from him a mortgage of it, to secure the payment of the purchase money, which mortgage deed has not been recorded according to law, nor has the whole amount of the purchase money been yet paid; after which purchase and mortgage, *John Roberts* conveyed the land to the other defendant, *Isaac G. Roberts*, and then they, *John* and *Isaac*, joined in a conveyance of it to the other defendant, *John*

*Gooding.* The answers aver, that *Isaac G. Roberts* and *John Gooding,* had no knowledge of the mortgage at the time the conveyances were made to them, but they do not say, that they did not then know that the purchase money had not been paid by *John Roberts.* So far as regards their denial of any knowledge of the mortgage, these answers are contradicted by the positive testimony of the witness, *Nathan Baynard,* who declares that *John Gooding* admitted that he had known of the mortgage; and from the circumstances of *John* and *Isaac G. Roberts* being brothers, and also the nephews of *Gooding,* and the mortgage having been frequently spoken of in a public manner at the house of *John Roberts,* where *Isaac G. Roberts* often visited his brother, and from other particulars related by the witnesses, I am satisfied that *John Gooding* and *Isaac G. Roberts* must be considered as purchasers, with full notice of the vendor's lien, and of the mortgage which had accrued or been given to secure the payment of the purchase money; and that under the one or the other, the land was bound for the payment of the purchase money to the representatives of the late *Andrew Black.* But the defendant, *John Roberts,* avers, and the plaintiffs admit, that some part of the purchase money has been paid, and yet there is no proof of the time, or amount of any payment. The case must therefore be referred to the auditor, to ascertain the amount now due to the plaintiffs, for the undivided share sold by their ancestor and intestate, *Andrew Black.*

Whereupon it is ordered that this case be, and it is hereby referred to the auditor, with directions to state an account from the pleadings and proofs now in the cause, and such other proofs as may be laid before him; and the parties are hereby authorised to take testimony in relation to said account before the auditor as usual, or before any of the commissioners appointed by this court, or before a justice of the peace, &c.

From this decree the defendants appealed to the Court of Appeals.

The cause was argued before BUCHANAN, Ch. J., ARCHER, and DORSEY, J.

*R. B. Magruder* for the appellants.

1. The answers of the defendants being uncontradicted, except by a single witness, and not *directly* contradicted, ought to have been held sufficient to prevent a decree against the defendants below.   2. That there were no circumstances which, taken together with the testimony of the witnesses, ought to have discredited the answers sufficiently to authorise the decree of the chancellor against the defendants.

No counsel argued for the appellees.

BUCHANAN, Ch. J., delivered the opinion of the court.

It appears that *Andrew Black*, having sold and conveyed to *John Roberts* his interest in a tract of land, took from him on the same day a mortgage of the same land to secure the payment of the purchase money, which deed of mortgage has not been recorded; that afterwards, *John Roberts*, the mortgagor, conveyed the same land to *Isaac G. Roberts*, and that subsequently, *John* and *Isaac G. Roberts* united in a conveyance of it to *John Gooding*.   The object of the bill, in which it is stated that the purchase money of the land for which the mortgage was given has not been paid, and that *Isaac G. Roberts* and *John Gooding*, when the conveyances were respectively made to them, had a knowledge of that fact, and also of the existence of the mortgage, is, to have the mortgage deed recorded, and the deeds from *John Roberts* to *Isaac G. Roberts*, and *John Roberts* and *Isaac G. Roberts* to *John Gooding*, vacated.   *Isaac G. Roberts* and *John Gooding* in their answers flatly deny any knowledge of the existence of the mortgage, when the conveyances to them were respectively made; and we think they equally deny a knowledge of the existence of a lien of any kind whatsoever.   Nor can we perceive any thing in the evidence, to show that either of them had before, or

at the time of the execution of the deed to *Gooding*, any knowledge that the purchase money, or any part of it, remained unpaid by *John Roberts*. An answer flatly denying an allegation in a bill, can only be overruled by the positive testimony of two witnesses, or of one, aided by pregnant circumstances, neither of which will be found to exist here, in relation to the denial by *Isaac G. Roberts* and *John Gooding*, of any knowledge of the mortgage, when the conveyances were respectively made to them. One witness, it is true, and only one, does swear that in a conversation with *Gooding*, he admitted that he had at that time a knowledge of the existence of the mortgage deed; but that was some time after the execution of the deed to him, and about the time at which he says in his answer he first acquired a knowledge of the mortgage, and does not carry back his knowledge of the mortgage, to the time of the conveyance to him. The testimony therefore of the witness, does not contradict, but is consistent with the answer; and if there were pregnant circumstances, which we do not wish to be understood as affirming, yet standing alone, without the aid of the positive testimony of a single witness, they would be unavailing. Nor is there the positive testimony of a witness, to show by the admissions of *Isaac G. Roberts*, or otherwise, that he had any knowledge of the existence of the mortgage at the time in question; we should therefore say, that in our opinion, *Isaac G. Roberts* and *John Gooding* are not to be considered and treated as purchasers with notice. But we think that the appeal has been improvidently taken; there has been no decision in chancery settling or binding the rights of the parties.

The chancellor has, it is true, in his remarks preparatory to the order appealed from, said, he is "satisfied that *John Gooding* and *Isaac G. Roberts* must be considered as purchasers, with full notice of the vendor's lien, and of the mortgage which had accrued or been given to secure the payment of the purchase money, and that under the one or the other, the land was bound for the payment of the pur-

chase money to the representatives of the late *Andrew Black;*" but he has passed no decree directing the deed of mortgage from *John Roberts* to *Andrew Black* to be recorded, or vacating and annulling the deeds from *John Roberts* to *Isaac G. Roberts,* and from *John Roberts* and *Isaac G. Roberts* to *John Gooding,* or either of them; but has passed an order only, referring the case to the auditor, with directions to state an account for the purpose of ascertaining the amount of the purchase money due to the complainants.

It is to be presumed, from the intimation given by the chancellor of his opinion, that it was his intention at that time, to decree relief to the complainants, at the final hearing. But he had not reached that stage of the cause to which the order in question was only preparatory, and might before the final hearing, have taken a different view of the case, and decreed accordingly. Nothing had been done conclusive, upon either the chancellor or the parties; no question of right had been settled: but upon further consideration he might, after an account taken in pursuance of the order, have rejected it and dismissed the bill, had not the proceedings been arrested by the appeal. It is not like the cases of *Thompson vs. McKim, et al.* 6 *Harr.* and *Johns.* 302, and *Williamson vs. Carnan,* 1 *Gill and Johns.* 184, where the rights of the parties were adjudicated upon, but cannot be distinguished in principle from *Snowden, et al. vs. Dorsey, et al.* 6 *Harr. and Johns.* 104, which has since been followed up by *Hagthorp, et ux, et al. vs. Hook's adm'r,* 1 *Gill and Johns.* 270, and *Danels vs. Taggart's adm'r, Ib.* 311, and *Hungerford vs. Bourne, ante,* 142. The appeal therefore is dismissed with costs.

APPEAL DISMISSED.