HICKLEY, TRUSTEE OF THOMAS CLAGETT *vs.* THE PRESIDENT AND DIRECTORS OF THE FARMERS AND MERCHANTS' BANK OF BALTIMORE, *et al.—June*, 1833.

By the common law, and apart from the provisions of the insolvent laws of this State, a debtor may secure one creditor to the exclusion of others, either by payment, or a *bona fide* transfer of his property.

Under the settled construction of the acts of 1812, *ch.* 77, sec. 1, and 1816, *ch.* 221, sec. 6, the words, "with a view or under an expectation of being or becoming an insolvent debtor," used in those acts, are held to mean, with a view or under an expectation of taking the benefit of the insolvent law.

Where the permanent trustee of an insolvent debtor proceeded in equity to set aside the judgment confessed by the insolvent prior to his application for a release under the insolvent laws, upon the allegation that the judgment was confessed under the expectation of becoming an insolvent debtor, and enabled the plaintiff, creditor, to pay himself by his levy upon

the defendant's property in preference to other creditors, and in support of his case examined the insolvent as his witness, who deposed, that he was in fact insolvent when he confessed the judgment, "but that he hoped at that time to be able to settle with his creditors; that he had not then the slightest idea of taking the benefit of the insolvent laws, and contemplated no such alternative, not having thought on the subject at the time referred to;" there being no evidence in the record to control the insolvent's proof, or showing the existence, at the time of the confession, of any such expectation: HELD, that the transaction must be left to its operation at common law, and being *bona fide,* and for a sufficient consideration must be sustained.

By the act of 1827, *ch.* 70, sec. 7, confessed judgments were declared within the operation of the insolvent laws, except in the city and county of *Baltimore;* and by the acts of 1830, *ch.* 65, and 1831, *ch.* 316, sec. 5, the like principle applies to confessed judgments in the city and county of *Baltimore;* prior to these acts judgments had not been considered preferences within the meaning of the insolvent laws.

The present bill was filed by the appellant, *Robert Hickley,* permanent trustee of *Thomas J. Clagett,* on the 1st of October, 1829. It alleged, that *Thomas J. Clagett* on the 26th of May, 1829, applied to the commissioners of insolvent debtors for the city and county of *Baltimore,* for the benefit of the insolvent laws, and that the complainant in the due course of said application, and proceedings thereunder, was appointed his permanent trustee, and that he has given bond with approved security as such. That the debts due from the insolvent at the time of his application remain unsatisfied, and that his effects in the hands of his trustee are wholly insufficient for that purpose. That said insolvent being about the 1st of May, 1829, indebted *to the Farmers and Merchants' Bank of Baltimore,* in about the sum of $1600, and being then, as was known to said *Bank,* in fact insolvent, was induced by it to confess a judgment for the amount of the said debt, for the purpose of giving to said *Bank* an undue and improper preference over the other creditors. That at the time this judgment was confessed, the said *Clagett* had it in contemplation to apply for the benefit of the insolvent laws; and that it was a part of

the arrangement between the said *Clagett* and the *Bank*, that an execution should immediately issue on said judgment, which did in fact issue, and a great part of the personal property of the insolvent was taken under it, and sold, and the proceeds applied to the payment of the aforesaid debt. The prayer of the bill is, that the *Bank* account and pay over to the complainant, the value of said property so seized, and sold under the aforesaid execution, and for general relief.

The answers of the *Bank* and *Clagett* admit the judgment, the execution, and sale of the property of the latter, and that the proceeds thereof was paid over by the sheriff, towards the satisfaction of the debt due the *Bank*, as charged in the bill. *Clagett*, in his answer, denied that he contemplated, at the time the judgment was confessed, being or becoming an insolvent debtor, or giving the *Bank* an undue and improper preference; and the *Bank* denied that they had any understanding with that view with *Clagett;* their object being, as they alleged, merely to secure their own claim, without any reference to the rights of others, and without knowing that *Clagett* contemplated applying for the benefit of the insolvent laws. The application by *Clagett*, for the benefit of the insolvent laws, at the time stated in the bill, and the appointment of complainant as his trustee, was also admitted.

A commission issued to take evidence, under which *Clagett*, the insolvent, was examined under an order for that purpose, passed by the chancellor, upon the application of the complainant. He stated among other things, that at the time he agreed to confess the judgment to the *Bank*, he was in fact insolvent, but that he hoped at that time to be able to settle with his creditors, and that he had not then the slightest idea of taking the benefit of the insolvent laws. That he contemplated no such alternative, not having thought on the subject at the time referred to.

BLAND, Chancellor, at March term, 1831, dismissed the complainant's bill with costs, who thereupon, brought the case by appeal to this court.

It was argued before BUCHANAN, Ch. J., and MARTIN, ARCHER, and DORSEY, J.

*Mayer*, for the appellant.

The confession of the judgment by agreement, and the seizure of *Clagett's* effects under it, constitute an undue preference from him to the *Bank;* and under the provisions of the insolvent laws; and independent too, of any provision of those acts against preferences to creditors, the proceeding in question, on the part of the *Bank*, and *Clagett* is, as to the appellant, as permanent trustee, a nullity, and the *Bank* is answerable to the trustee for the full value of the property thus unduly appropriated. He referred to the acts of 1807, *ch.* 55, *sec.* 2, 1812, *ch.* 77, *sec.* 1, 1816, *ch.* 221, *sec.* 6, 1805, *ch.* 110. The *Wm. King*, 2 *Wheat.* 141. *Sheps. Touch.* 145. 1 *Bac. Abr.* 429. 3 *Com. Dig.* 110. 3 *Bac. Abr.* 297, 298, 321. *Rob. on Frauds*, 489. *Frasier, Jr. vs. Frasier*, 9 *Johns. Rep.* 80. *Wilkinson vs. Wilkinson*, 3 *Swanst.* 529. *Benson vs. Le Roy*, 4 *Johns. Ch. Rep.* 651. *Livingston vs. Hubb*, et. al. 2 *Johns. Ch. Rep.* 512.

*Dulany* and *G. H. Brice*, were stopped by the court.

BUCHANAN, Ch. J., delivered the opinion of the court. By the common law, and apart from the provisions of the insolvent laws of this State, (the bankrupt laws of *England* not being in force here) a debtor may secure one creditor to the exclusion of others, either by payment or a *bona fide* transfer of his property. The 9th *section* of the insolvent act of 1805, *ch.* 110, denies the benefit of that act to any debtor found guilty of having given to any creditor or security, an "undue and improper preference," leaving doubtful what constituted *an undue and improper prefer-*

*ence.* And to remove that doubt, the act of 1807, *sec.* 2, provides that any deed, &c. made by any person, to any creditor or security, *with a view, or under an expecta-tion of being, or becoming an insolvent debtor, shall be taken to be an undue and improper preference* to such creditor or security, *within the meaning of the original act of* 1805. Neither the original act of 1805, nor the supple-ment of 1807, renders void or inoperative a deed, &c. given *bona fide* by a debtor, to secure a favored creditor or secu-rity, but they rather virtually recognize the validity of such a deed. The act of 1807, only declaring what shall be deemed *an undue and improper preference,* and the act of 1805, doing no more than by way of punishment, denying to a debtor giving such preference, the benefit of its provi-sions, without impairing the rights of the preferred credi-tor under such deed, and leaving it to its operation at com-mon law.

But the acts of 1812, *ch.* 77, *sec.* 1, and 1816, *ch.* 221, *sec.* 6, the latter relating to the city and county of *Baltimore,* pro-vide, that any deed, &c. made to a creditor, or security, by any person, with a view or under an expectation of being, or becoming an insolvent debtor, and with intent thereby, to give an undue and improper preference to such creditor or security, shall be void, and that the title to the property shall vest in the trustee of such insolvent debtor. Thus for the first time making void such a deed of preference, given with a view, or under an expectation of being or be-coming an insolvent debtor; which would have been su-pererogation, if such deeds had been considered void before. Under the settled construction of those acts, the words, "with a view, or under an expectation of being or becom-ing an insolvent debtor," are held to mean, *with a view, and under the expectation of taking the benefit of the insol-vent laws ;* and if the judgment confessed by *Thomas J. Clagett,* who was a resident of the city of *Baltimore,* could be considered as within the intent and meaning of those acts, and had been given *with a view, or under an expecta-*

*tion of taking the benefit of the insolvent laws, and with an intent thereby to give an undue and improper preference to the Bank,* it would have been null and void, and the property taken under the execution sued out upon it, would have vested in his trustee.

But the appellant thought proper to make *Thomas J. Clagett* a witness, and to examine him as such, and he has positively, and unequivocally sworn, that he did not confess the judgment with a view, or under an expectation, or intention to take the benefit of the insolvent laws; and there is no evidence in the record, to control his showing the existence at the time, of any such view or expectation. It is therefore a transaction wanting the ingredients of such an undue and improper preference, as is declared by the insolvent laws to be void; and is consequently left to its operation at common law, by which, being *bona fide,* and for a sufficient consideration, it is sustained.

The act of 1827, *ch.* 70, *sec.* 7, provides that the voluntary confession of a judgment in favor of a creditor, or security by any person, with a view, or under an expectation of being or becoming an insolvent debtor, shall be an undue and improper preference, within the intent and meaning of the act of 1805; with a proviso, in the 9th section, that it shall not extend to the city and county of *Baltimore.* Thus showing, that before that time, such judgments had not been considered as being within the meaning of the act of 1805; and by the proviso, giving validity and effect to such judgments in the city and county of *Baltimore.*

But by the act of 1830, *ch.* 65, a judgment so confessed in the city or county of *Baltimore,* is declared to be an undue influence, an improper preference, and null and void. And by the act of 1831, *ch.* 316, *sec.* 5, the provisions of the 7th section of the act of 1827, *ch.* 70, are extended to the city and county of *Baltimore,*—so that the judgment in this case, which was confessed by *Thomas J. Clagett,* in the city of *Baltimore,* on the first day of May, in the year 1829, before the passage of the acts of 1831, is protected

by the proviso in the 9th section of the act of 1827, and would not be void under the provisions of the insolvent laws, even if it had been confessed with a view, or under an expectation of being or becoming an insolvent debtor.

DECREE AFFIRMED WITH COSTS.