ELI BEATTY, TRUSTEE IN INSOLVENCY OF JOHN DAVIS *vs.* CHARLES DAVIS AND OTHERS.—*December* 1850.

An assignment of the whole of a debtor's property, which provides that one class of creditors shall be preferred to another, and the surplus, if any remains after payment of all debts, to be paid to the grantor, unless tainted

by fraud, is good both at common law, and under the statute of 13th *Elizabeth.*

The reservation in such an assignment of the power *to the trustee,* to mortgage the property conveyed to him, if he should deem it necessary to do so for the purposes of the trusts, does not vitiate the conveyance.

To render a deed of this description void under the insolvent laws, there must be a two fold intent, the intent to apply, and the intent to prefer.

The answer of the debtor, who was made a defendant, responsive to the bill, denying that he made the transfer, with a view or under an expectation of applying for the benefit of the insolvent laws, is conclusive upon the question of intention, unless overcome by the testimony of two witnesses, or of one with corroborating circumstances.

The circumstances of this case, distinguished from those of *Dulany vs. Hoffman,* 7 *G. & J.,* 170.

It is no objection to the competency of a witness, that he is the solicitor for the party for whom he testifies, such objections go to the credibility and not to the competency of the witness

The admissions of a party on the record are evidence, although he stands in the attitude only of a trustee, provided the admissions were made after the fiduciary character has attached.

In this case the declarations and admissions of an insolvent trustee, a party on the record, made after he became such trustee, were *held* admissible in evidence.

APPEAL from the equity side of *Washington* county court.

The bill in this cause was filed on the 28th of June 1848, by the appellant, as the trustee in insolvency of *John Davis,* to vacate a deed made by said *Davis,* previous to his application, to his son *Charles W. Davis.* This deed is dated the 6th of October 1845; and embraces all the property, of every kind, of the grantor, which it conveys to the grantee in trust, to be sold and the proceeds of sale to be applied, *first,* towards the payment of "all taxes, liens, judgments and other incumbrances," and "a commission of five per cent. to the trustee;" *secondly,* "to pay and satisfy" *particular creditors,* whose names are set out in the deed, with the sums alleged to be due to each of them, amounting to $27,048.88. These preferred creditors were all, with but few exceptions, either children, grand-children or other near relatives of the grantor. *Thirdly* after the payment of these sums, due the "several creditors specified," the balance of the proceeds of sales to be applied "if sufficient,"

Beatty, Trustee of Davis, *vs.* Davis, *et al.*—1850.

to the payment of all other debts and liabilities, and if not sufficient, to be *equally distributed* among the remaining creditors. The deed also provides, that "in case the said *Charles W. Davis* shall deem it necessary for the purposes of this trust, to mortgage the said real estate or any part thereof, he is hereby invested with full power so to do, and to execute all necessary deeds or conveyances, to secure the mortgage." The grantor applied for the benefit of the insolvent laws, on the 1st of March 1848, and received his final discharge on the 12th of December 1848. The appellant as his insolvent trustee is the only complainant, no creditor having united in the bill. The grantor, the various *cestui que trusts*, and the grantee in the deed, are all made defendants. The grounds upon which the bill impeaches the deed, are fully stated in the opinion of this court.

The complainant afterwards filed a supplemental bill, in which he impeaches another deed executed by the same grantor, sometime prior to the deed impeached by the original bill, and which is described as a deed to his son *John Davis, Jr.*, for about 900 acres of land in *Allegany* county, and which it is alleged was executed either *without* consideration, or upon inadequate consideration, and which has never been paid, either to the grantor, or the complainant, his trustee. There is no allegation of existing insolvency at the time, on the part of the grantor, though it is stated he was largely in debt.

The defendants all deny the alleged collusion and fraud; they deny that the debts were fictitious, or that the grantor made the deed of the 6th of October 1845, with a view or under an expectation of becoming an insolvent debtor, or with intent thereby to delay or defraud creditors. In answer to the supplemental bill, the said *J. Davis, Sen.*, and *J. Davis, Jr.*, set forth in full, a record of a proceeding on the equity side of *Allegany* county court, as fully explanatory of the transactions between them, by which the son came into possession of the land now held by him, in *Allegany* county, and they rely on that proceeding in support of the son's title. The question as to the validity of this title, not being decided in this case, it is unnecessary to state the nature of said proceedings,

in *Allegany* county court. All other facts necessary to an understanding of the opinion are stated in it.

A *pro forma* decree was passed by the court (Weisel, A. J.,) below, dismissing the bill, from which the complainant appealed.

The cause was argued before Magruder, Martin and Frick, J.

By John Thompson Mason, for the appellant, and
By Geo. Schley and Wm. Schley, for the appellees.

Martin, J., delivered the opinion of this court.

The principal question presented for the consideration of the the court by this record, is that which relates to the validity of the conveyance executed by *John Davis, Sr.,* to *Charles W. Davis,* on the 6th of October, 1845. This deed comprised the entire estate of the grantor, and was made in trust.

1st. To discharge the expences consequent upon the execution of the trust, with a commission of five per cent. to the trustee.

2nd. To the payment of all taxes, liens, judgments and other incumbrances resting on the property conveyed.

3rd. To the payment of certain preferred creditors, whose names are enumerated in the deed.

4th. After the payment of the sums due the several creditors specified in the preceding class, the proceeds of sale to be applied, if sufficient, to the payment of all other debts, and liabilities of the grantor, and if not sufficient, to be equally distributed among the remaining creditors.

5th. Should a surplus of the proceeds of sale, &c., remain, after payment of all costs, commissions, counsel fees, judgments, liens, incumbrances, and all the debts due and owing, or contracted by the grantor, either as principal, security or endorser, then to pay over such surplus to the grantor, his executors, administrators or assigns.

It appears from the record, that this case was submitted to

Beatty, Trustee of Davis, vs. Davis, et al.—1850.

*Washington* county court, as a court of equity. On the 30th of May, 1849, a *pro forma* decree was passed by that court, with the consent of the counsel concerned in the cause, maintaining the validity of the deed, and dismissing the complainant's bill. This correctness of this decree forms the subject of the present appeal.

The objections made to the deed, are:

1st. That it contains preferences and provisions, in contravention of the statute of 13 *Eliz.*, *ch.* 5, and is therefore to be treated as fraudulent upon its face.

2nd. That it was made with the view of creating surreptitious debts, and is to be considered as contaminated with actual fraud.

3rd. That the deed was made by the grantor, with the view, or under the expectation of being or becoming an insolvent debtor, and with an intent thereby to give an undue and improper preference to the preferred creditors therein specified; and is therefore to be condemned as in violation of the insolvent laws.

1st. There is no foundation for the first objection. The provision in the deed, that any surplus that may remain unabsorbed by the debts of the grantor, shall be paid by him, is of course unexceptionable. It only secures to him, by the terms of the conveyance, a right which the law would imply in his favor in the absence of any express reservation. This is the only reservation in favor of the debtor, to be found in the conveyance. And that a debtor in failing circumstances, apart from the provisions of an insolvent or bankrupt law, may, in virtue of that absolute dominion which he holds over his estate, make a *bona fide* assignment of the whole of it, for the payment of his debts, with stipulations in favor of preferred creditors, is certainly at this day, a legal proposition too firmly established to be controverted. *Hickley vs. Farmers and Merchants Bank,* 5 *G. & J.,* 377. *State of Maryland vs. Bank of Maryland,* 6 *G. & J.,* 205. *Niolon vs. Douglas,* 2 *Hill's Ch. Rep.,* 446. *Brasher vs. West,* 7 *Pet.,* 608, In this last case, it appeared that *West,* by a deed of the 21st of

April, 1807, assigned all his estate to trustees to be sold, and the money paid first to certain preferred creditors, and afterwards to his creditors generally; and the Supreme Court, when speaking of this clause of the deed, said: "In *England*, such an assignment could not be supported, because it is by law an act of bankruptcy, and the law takes possession of the bankrupt's estate, and disposes of it. But in the *United States*, where no bankrupt law exists for setting aside a deed honestly made for transferring the whole of a debtor's estate, for the payment of his debts; the preference given in this deed to favored creditors, though liable to abuse, and perhaps to serious objections, is the exercise of a power resulting from the ownership of property, which the law has not yet restrained. It cannot be treated as a fraud."

That the deed in question contains an assignment of the whole of the grantor's property, and provides that one class of creditors shall be preferred over another class, is therefore no objection to it, unless tainted by fraud; the right thus to prefer one creditor or class of creditors, being a privilege secured to the debtor by common law, and not abridged or restrained by the statute of 13 *Elizabeth*.

By referring to this conveyance, it will be seen that the trustee is invested with the power of mortgaging the real estate conveyed to him, if he should deem it necessary to do so for the purposes of the trust, and it has been contended that the deed is to be considered as vitiated by this provision. We do not think so. It is entirely unlike the case where a power to mortgage was reserved to the debtor. That was properly treated as a badge of fraud. It left upon the mind the impression that the debtor's control over the property continued, and that the assignment was colorable. But this is not the character of the power granted by the deed to this trustee. It was a beneficial power, introduced to enable the trustee to guard against a forced and ruinous sale of the property, and might have been most advantageously used for the interest of the *cestui que trusts*.

2nd. The second objection urged against the deed, is of a

Beatty, Trustee of Davis, *vs.* Davis, *et al.*—1850.

different character. It charges the design in the grantor to perpetrate actual fraud, by the creation of fraudulent and surreptitious debts. A charge imputing to this debtor a motive so corrupt as that alleged by the bill, is certainly not to be presumed. Has it been proved? We think not.

The class of debts against which this charge is directed, are the debts known in the proceedings as those due to various members of the *Watson* family, the children and grand-children of the grantor.

As to these debts, *William J. Ross*, in his answer in this respect responsive to the bill, states, that he knows that the debts due the *Hagerstown Bank*, the *Frederick Town Savings Institution*, *Mary A. Watson*, *Elizabeth A. Watson*, *Martha Watson* and *Fanny Watson*, are *bona fide* debts, and were so at the date of the execution of the deed. That the money or the claims due to *Mary*, *Elizabeth*, *Martha* and *Fanny Watson*, passed through his hands as administrator of *John Watson*, deceased, many years ago, upon the express pledge of the said *John Davis*, that he would pay or secure the payment of the said claims, and that at the date of the execution of the deed of trust, he urged upon the said *John Davis* the payment of the said claims, and the claim due *Mary J. Watson*.

*John Davis*, in his deposition, declares that he was in possession of nearly the whole of the *Watson* estate, amounting to about fourteen thousand dollars after deducting the amount due the deponent by the said estate; which sum of fourteen thousand dollars he had always promised to secure to the *Watson* family.

Each of the defendants in their answers to the bill, deny that the claims held by them against *John Davis* were fraudulent or surreptitious, as charged in the bill. These answers are strictly responsive to the bill. The testimony of *John Davis* stands unimpeached. And with these statements and this evidence before us, it is impossible to do otherwise than declare that this allegation is to be dismissed, as entirely unsupported by any proof in the cause. The charge of collusion is equal-

28    v. 9

ly barren of proof, and was not indeed relied upon in the argument.

3rd. The third objection raises the question, whether the deed in controversy was made by the grantor with a view, or under an expectation of applying for the benefit of the insolvent laws, and with an intent thereby to give an undue and improper preference to the creditors therein named.

To place a deed of this description within the operation of the insolvent laws, there must be a two fold intent. *5 Har. and John.*, 411. But as we think it perfectly clear upon the pleadings and evidence in this cause, that the grantor cannot be considered as having made the deed of the 6th of October, 1845, "with the view or under the expectation of being or becoming an insolvent debtor," it is unnecessary to inquire whether the assignment is to be regarded as voluntary, or as in compliance with the demands and solicitations of creditors, so as to place the case within the protection of the principle established by the decision in *Crawford and Sellman, vs. Taylor*, 6 *Gill and John.*, 323.

We have seen that this deed was executed on the 6th of October, 1845. It appears from the record, that *John Davis* applied for the benefit of the insolvent laws on the 1st of March, 1848. He was discharged on the 12th of December of the same year, more than two years after the date of the conveyance. In his answer to the bill of complaint, the defendant expressly denies that he made the transfer in question, with the view, or under the expectation of applying for the benefit of the insolvent acts; and an answer thus responsive to the bill, emenating from a party made a witness by the act of the complainant, speaking in reference to the motives and views, under the influence of which, the transfer in dispute was made, a matter lying necessarily within his own bosom, must be held as conclusive upon the question of intention, unless it is overcome by the testimony of two witnesses, or that of one witness with corroborating circumstances. *Roberts vs. Salisbury*, 3 *G. & J.*, 433. No such testimony has been presented by the complainant. After carefully collating the

Beatty, Trustee of Davis, *vs.* Davis, *et al.*—1850.

several answers made by the defendant to the various bills of complaint introduced into the record, we are satisfied that he is not obnoxious to the charge of inconsistency. The truthfulness of that part of the answer which contains a negation of the allegation, that he executed the assignment with the expectation of applying for the benefit of the insolvent laws, is sustained by the strong fact that there was an intervention of more than two years between the date of the transfer, and the period at which he placed himself under the protection of those laws. In the case of *Dulany vs. Hoffman,* 7 *G. & J.,* 170, there was an interval of only seventeen days between the assignment and the application.

In this respect, this case is clearly distinguishable from that of *Dulany* and *Hoffman.* It is unlike that case in another most important feature. In the case referred to, the defendants left unanswered the allegation in the bill, that the goods in contest were delivered by them to *Hoffman* and *Bond,* with the view or expectation of becoming insolvent debtors, leaving upon the mind of the court, the impression, that this allegation was not answered, because it could not with truth be denied. But this is not the predicament of this defendant. He has subjected himself to no such injurious suspicions. In his answer to the bill, he has plainly and directly denied, that he made the deed in question, in contemplation of the protection afforded by the insolvent laws. The cases are dissimilar in all their material circumstances.

It is true, that by this assignment the grantor denuded himself of his whole estate, but the testimony shows, we think, that this was done, under the belief sincerely and honestly entertained at the period of the execution of the assignment, founded upon estimates carefully made, that his property would be amply sufficient for the payment of his debts.

Before leaving this branch of the case, it remains only to notice very briefly, the exceptions taken by the counsel for the appellant, to a portion of the testimony to be found in the record.

The first exception relates to the testimony of *Joseph J.*

*Merrick.* The objection urged against the competency of *Mr. Merrick*, is, that he was at the time he was sworn, and still is one of the solicitors for the defendants.

This is a novel objection to the competency of a witness, and is placed upon two decisions in the *English Bail* court, cited in the case of *Potter vs. The Inhabitants of Ware*, 1 *Cush. Mass.*, 519. *United States Monthly Magazine, Jany.* 1851, *page* 57.

There is we think, no force in the objection. It is not pretended that this witness was incompetent on the ground of interest, and it is a well settled, and familiar rule, that by the common law, all persons are to be considered as competent witnesses, unless they are disqualified by want of capacity, or of religious faith, by infamy, or by a direct interest in the result of the suit.

*Potter vs. Inhabitants of Ware*, 1 *Cushing's Mass. Rep.*, 519. *Glenn vs. Von Kapff*, 2 *G. & John*, 134. Objections of this character go to the credibility, and not to the competency of the witness.

The counsel for the appellant has also excepted to the admissibility of the declarations of the complainant, as detailed by *Joseph J. Merrick*, because he is a mere nominal party to these proceedings, the creditors being the real parties in interest. There is no ground for this objection. It is apparent from the record, that these declarations and admissions were made by the complainant, after he had become the trustee of *John Davis;* and this being so, the point is covered by the case of *Dent vs. Dent*, 3 *Gill*, 482. It was in that case held, by the Court of Appeals, as indisputable law, that the admissions of a party on the record, are evidence, although he stands in the attitude only of a trustee, provided the admissions were made after the fiduciary character had attached.

The appellant's objection to the competency of *John Davis, Sen.*, on the ground of interest in this suit, must be also overruled. He could have had no interest in the result of this controversy, at the time of his examination as a witness, for the plain reason, that at that period it had been ascertained

that his estate was totally insufficient for the payment of his debts. For him there was no surplus.

We think, therefore, that the deed of the 6th of October 1845, is free from objection, and is to be treated as a valid conveyance. Assuming this to be true, it is manifest, that the controversy with respect to the *Allegany* property, is not open for examination on this bill. With respect to the merits of the contestation relative to the lands in *Allegany* county, we desire to be understood as intimating no opinion. With that controversy we have, at present, no concern. For as the deed of the 6th of October 1845, vests in *Charles W. Davis* the entire estate of the grantor, embracing his land in *Allegany* as well as in *Washington* county, it is very clear, that if the agreement between *John Davis, Sen.*, and *John Davis, Jr.*, with reference to the *Allegany* property, is liable to be impugned, the proper party to assail it, is *Charles W. Davis,* invested as he is by the deed of 1845, with the legal title to this estate. We do not however mean to say, that if *Charles W. Davis* failed in this respect to discharge his duty, it would not be competent for the appellant to impeach this alleged contract in a bill properly framed for that purpose, and calling upon the conventional trustee to account to him for the manner in which he had administered the trust.

The decree of the court below is affirmed, with costs in both courts.

**DECREE AFFIRMED WITH COSTS.**