## John Glenn, Trustee of Charles Grover, *vs.* Charles Grover and Matthew McColm.

It is well settled, that a debtor, in failing circumstances, may prefer one creditor to another by a transfer of his property, made in good faith; and it is equally clear, that if such a transaction be assailed on the ground of fraud, the *onus* of proof is upon the party impeaching the assignment.

Where a bill charges, generally, that certain deeds were fraudulent and void, and also propounds special interrogatories predicated upon some of the averments, the defendants have a right to answer all the allegations whether specially interrogated or not.

In such a case the positive denials of the answers must be met in the usual way, by the oaths of two witnesses, or by that of one with pregnant circumstances.

The deeds themselves are *prima facie* proof of what the consideration was upon which they were executed.

The fact that the grantor is embarrassed or insolvent at the time, cannot affect the validity of the conveyance, provided it be made in good faith; preferences are allowed, and they always pre-suppose that there are creditors against whom the assignment is to operate.

Where a deed is without consideration, the argument, that the fact of the indebtedness or insolvency of the grantor at the time being shown, throws the burden of proof upon the grantee, applies with great force.

Even where there is a debt due from the grantor to the grantee, the amount of property conveyed, compared with the debt intended to be secured, and the number, amount and character of his other debts, may be properly considered in determining the *bona fides* of the transaction towards other creditors.

The fact that the grantee leased the land conveyed by the deed, to the grantor upon the terms, that the rent should be expended in improving the estate, is not evidence of fraud between the parties.

Where the defendants are interrogated by the bill as to the arrangement made between them about the farm conveyed by the deed which the bill attacks, and whether it was written or verbal, and the answer sets out a paper as the arrangement, it is responsive, and must be taken as true until disproved.

Where the handwriting of a party who signs a paper is proved, the contents are also thereby established until the contrary appears. The execution and delivery import that the instrument is truly dated.

Possession of a bond by the obligee is *prima facie* evidence of delivery and acceptance.

The answer of one defendant, however inconsistent with that of his co-defendant, or with the proof in the case, cannot be used against the latter.

The statements of the grantor, made at the time of his application for the benefit of the insolvent laws, and after the execution of the conveyances, that he was to have the property re-conveyed to him upon certain terms, cannot, standing by themselves, be used to defeat or impair the title of the grantee.

A responsive answer of the grantor, speaking in reference to the motives and views under the influence of which the transfer was made, is conclusive upon the question of intent unless overcome by the testimony of two witnesses, or that of one with pregnant circumstances.

If there be pregnant circumstances, yet standing alone, without the aid of the positive testimony of a single witness, they will be unavailing.

APPEAL from the Court of Chancery.

The bill in this case was filed on the 16th of May 1841, by the appellant, as permanent trustee of Charles Grover, an insolvent debtor, and as adm'r *d. b. n.*, of Eaton R. Partridge, to set aside, as fraudulent against creditors, two deeds executed by Grover to the appellee, McColm, the one dated the 20th of April 1839, conveying a certain farm in Baltimore county, the other dated July 18th, 1839, conveying all the stock, farming utensils, &c., on said farm.

The bill alleges, that Grover had the equitable title to the farm in controversy, then worth from $6,000 to $7,000, the legal title being in certain trustees; that he procured the trustees to execute, and joined them in executing the deed of April 20th, and afterwards, himself, executed the deed of July

18th.   That the first was made without consideration and fraudulently, to hinder, delay and defraud the creditors of Grover, and screen from them the property mentioned in it for his own use and benefit, and was received by McColm with knowledge of this fraudulent intent on the part of Grover, and combining and confederating with him to effectuate it.   That the second deed was also covinously and fraudulently made, and was meant to hinder, delay and defraud the creditors of Grover, and to screen the property described in it from their just debts, for his own use, and that the consideration therein mentioned is merely colorable and was not paid at the time, and that it was also received by McColm with like knowledge and design as the first deed.

The bill further charges, that Grover, at the time of executing these deeds, was considerably indebted on his own account, and was under heavy engagements for others, and had, on the 16th of January 1839, been sued as surety in the bond of Susan Partridge as adm'x of John Partridge, against whom a judgment for $45,000 had been recovered on the 22nd of December 1838, by the administratrix *d. b. n.*, of John Partridge.   That at the date of the first deed, Grover was utterly insolvent and known so to be by McColm; that the real and personal property conveyed by said deeds constituted, at that time, the largest part of Grover's available assets, and that he had continued to, and still does use, enjoy and possess all said property for his own use.   That Grover applied for the benefit of the insolvent laws on the 16th of March 1841, and the appellant was appointed his permanent trustee, and that on the 22nd of February 1837, Grover was indebted to the estate of Eaton R. Partridge in the sum of $5000, which is still due and unpaid.·   The bill then prays that Grover and McColm may answer "all and singular the premises," as if specially interrogated thereto, and that "they may set forth the amount which had been paid by Grover on account of his purchase of said farm at the time of the conveyance therefor to McColm, and what was the arrangement then, or theretofore, or since made between them in respect to said farm, and

whether it was written or verbal, and whether the considera-
tion mentioned in the conveyance of the stock and utensils
passed at the time of executing the same, and that Grover
may set forth the amount of his indebtedness and property at
the date of the first deed by items," that the deeds be annulled
as fraudulent, and the property sold, and for further relief.

The answer of McColm admits the execution of the two
deeds, but denies that either of them was made without con-
sideration, or fraudulently, to hinder, delay or defraud the
creditors of Grover, or to cover or screen from them the pro-
perty for the use of Grover or any other person.   It also
denies that McColm received either of the deeds with know-
ledge of the fraudulent intent imputed by the bill to Grover,
or that he combined with Grover for any such fraudulent in-
tent or purpose, and avers that said conveyances were made
for *bona fide* considerations, fairly and fully paid by McColm
before their execution, except a small balance on the real
estate which was paid immediately after.   It also denies any
general knowledge by McColm of Grover's circumstances at
the times when the deeds were executed, does not admit that
he was then utterly insolvent, and avers that he was not so
known to be by McColm when he received said deeds, and
that he did not know what proportion of Grover's assets the
property conveyed constituted.   It then admits, that Grover
has continued in possession of the property since the convey-
ances, but denies that he has taken or enjoyed the rents and
profits to his own use, but on the contrary avers, that his pos-
session has been as McColm's tenant under certain agree-
ments filed as exhibits A and B.   It then admits Grover's ap-
plication for the benefit of the insolvent laws, as alleged, and
that appellant is his permanent trustee as well as administra-
tor *d. b. n.* of E. R. Partridge, but no indebtedness of Grover
to Partridge's estate is admitted.

The answer then alleges, that in consequence of sundry
dealings for several years previous, Grover was indebted to
McColm, on the 1st of July 1838, in the sum of $2220.95,
and in consequence of further advances, owed him, on the

15th of April 1839, $3892.88, principal and interest. That the real property in controversy was bought by one Rebecca Carter from the trustees, under a decree in equity, and that she, on the 1st of March 1838, transferred her interest therein to Grover. That McColm, on the 15th of April 1839, agreed to purchase the land from Grover at $25 per acre, and accordingly paid the trustees $1434.78, gave Grover a release for $3892.88, his above mentioned indebtedness, and received the conveyance impeached by the bill, in which the trustees, Rebecca B. Cater and Grover, joined as grantors. That this left a small balance of $128.08 still due Grover, which was afterwards fully paid. It then avers, that this purchase was *bona fide* and fair, without any reservation on the part of Grover, and certainly without any view of his being, or contemplating to become, an insolvent debtor. That a few days after McColm leased the farm to Grover on the terms stated in exhibit A. That Grover being thus in possession of the farm, and owning the stock and implements thereon, McColm, on the faith thereof and the agreement that they should be purchased and taken by him at their value, from time to time advanced Grover cash and notes to an amount exceeding $2000, when, upon the 18th of July 1839, McColm purchased and received a bill of sale of said stock and implements for the sum of $1100. That this purchase was *bona fide* and fairly made, without any view to Grover's insolvency. The answer likewise avers, that said contracts of purchase were made verbally, except so far as they appear on the conveyances and exhibits filed with the answer.

*Exhibit A,* filed with this answer, is a paper admitted to be signed by McColm and Grover, dated 20th of April 1839, whereby McColm certifies, that he has leased the farm in controversy to Grover for five years from date, for $326 *per annum,* said rent to be paid by improvements on the farm, *i. e.,* in clearing the land, making fences, and erecting such necessary buildings as McColm may consent shall be built. No timber is to be cut or sold off the farm, except by McColm's consent, or for the use of the farm or buildings.

All improvements are to be valued by referees at the lowest cash price, and all misunderstandings with respect to anything in the lease to be settled by arbitration.

*Exhibit B* is a paper also admitted to be signed by McColm and Grover, dated 18th of July 1839, and recites, that McColm has received from Grover a bill of sale of his stock and farming utensils, valued at $1100, for which sum he has given Grover credit on account, and that he has agreed with Grover that the latter shall have the use of said stock and farming utensils for five years, from the 20th of April 1839, at $66 *per annum*, to be paid in money or improvements on the farm, such as are described in the above lease. Grover agrees not to kill any of the stock or sell any thereof without McColm's consent, and also to account for the full value, as now valued, at the end of the five years.

The answer of Grover states, that he purchased the farm in question at $25 per acre, amounting to $5275; that he paid Mrs. Carter on account thereof about $1500 in money lent to him by McColm, $700 in a small house, and $1800 for building two houses for her, of which sum McColm lent him between $1000 and $1100. That being indebted to McColm for said loans and advances, and for other moneys to a large amount, he agreed to cause said farm, stock and farming utensils to be conveyed to McColm, the latter to pay the balance of the purchase money due thereon, about $1400, and that the deeds attacked by the bill were made in accordance with this agreement, and for that consideration and no other, and without any fraudulent purpose whatsoever, either to screen the property or to secure it for his use, or any other fraudulent purpose. It denies fraudulent continuance in possession, averring that his possession has been as tenant to McColm; denies all fraud or fraudulent combination with McColm, and avers that the farm and chattels are the property *bona fide* and entirely of McColm, he, Grover, having no interest therein and no right to claim a reconveyance thereof, except so far as McColm may think proper to reconvey them to him, on payment of all that Grover owed him on

every account, said McColm having, after the conveyances, so promised Grover, but without any such view to reconvey-ance, or any terms to that effect or on' that subject, having been a part of the agreement under which the conveyances were made. His application for the benefit of the insolvent laws is then admitted, and he also admits that when said conveyances were executed he was "indebted considerably." He also admits his suretyship for Susan R. Partridge, but denies her indebtedness in the sum of $45,000.

The complainant then filed with the commission, as part of his proof, certified copies of the two deeds attacked by the bill. The first, being the deed of the farm, recites the sale of the farm to Mrs. Carter by the trustees, on the 18th of October 1837, at $30.25 per acre, amounting to $6244.73, the transfer for a valuable consideration by Mrs. Carter to Grover, his assignment to McColm, and the satisfaction to the trustees of the whole purchase money, and then conveys the farm containing about two hundred and six acres to McColm; the grantors being the two trustees, Mrs. Carter, and Grover and wife. The second, being the conveyance of the chattels, is executed by Grover, and conveys the chattels in dispute to McColm, "in consideration of the sum of $1100 in hand paid by him."

The papers in Grover's insolvent application were also filed by complainant. These papers and the proof in relation to them show, that McColm appeared with Grover before the insolvent court and made oath to the fact of Grover's residence, on the same paper and immediately under the schedule of Grover's property; and that in said schedule Grover, after stating the conveyances to McColm upon the considerations mentioned in his answer, avers, that both the farm and the stock were conveyed to him under an agreement, that if within five years Grover should pay all his indebtedness to McColm, the latter would reconvey the property, and if not, it should be sold and the said indebtedness paid out of the proceeds, and that no conveyances or agreements have since taken place on his part relative to said farm or stock. These papers were all

prepared by Charles F. Mayer, he being the provisional trustee, and McColm, his surety in his bond, as such trustee. They also show, that Grover made his application on the 16th of March 1841, received his personal discharge on the same day, that the complainant Glenn was appointed his permanent trustee, and a final discharge granted on the 1st of December 1841.

The complainant also proved Grover's suretyship for Mrs. Partridge, that suit was brought against him as such surety on the 16th of January 1839, and judgment recovered on the 19th of September 1839, for $18,081.69. Proof was also taken tending to prove that Grover had possession of the farm and stock, with full control over both from the date of the conveyances till the time the witnesses were examined, selling, buying, building and enjoying profits as if owner.

On the part of the defendants it was proved, by Charles F. Mayer, who prepared Grover's insolvent papers, that McColm was not present when they were prepared, and never read them, and that they never went out of witness' possession until they were sworn to; that McColm only attended to prove Grover's residence, and to become surety for his appearance and for the witness as his provisional trustee.

The complainant excepted to the admissibility and competency as evidence of all parts of the answers, setting up affirmatively any consideration as having been paid by McColm to Grover, or the trustees, for the farm, and also to the admissibility in evidence, for any purpose, of *exhibit B.* The defendant, McColm, also excepted to the admissibility against him of all portions of the evidence furnished by the insolvent papers connected with Grover's application, touching any contract between Grover and McColm in regard to the property in dispute.

The chancellor (JOHNSON) passed a decree dismissing the bill, without costs, from which the complainant appealed. The chancellor's opinion accompanying this decree is reported in 3 *Md. Ch. Decisions,* in the case of *Grover vs. Grover.*

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*S. T. Wallis* for the appellant.

The deeds are attacked upon two grounds:—1st, want of consideration; 2nd, assuming the consideration to be sufficient, they were executed *mala fide.* Upon the first point, the state of Grover's affairs at the time of the execution of the deeds must be taken into consideration. The documentary evidence shows him to have been greatly in debt, and that he himself knew it. All the circumstances, the sale of the farm on which he lived, and all his household furniture and personal property, and the taking a lease of the property from the grantee, tended to make the latter careful in the manner in which he dealt with the grantor, and throw the burden of proof on the grantee, to sustain the validity of the consideration and the *bona fides* of it. 5 *Gill,* 460, *Worthington vs. Shipley.* 1 *Smith's Leading Cases,* 43. 5 *G. & J.,* 455. 4 *Vermont Rep.,* 413. 7 *G. & J.,* 175. 8 *Searg. and Rawle,* 444. There is no sufficient evidence of any consideration paid by McColm, to or for Grover, to maintain the deeds. 2 *Gill,* 122. 5 *G. & J.,* 445. McColm knew that the sale of the farm would defraud creditors, and this makes the act fraudulent, upon the principle that if any transaction necessarily produces the effect which a statute declares to be fraudulent as against creditors, the court will pronounce such act to be fraudulent. 7 *Gill,* 404, *Gardner vs. Lewis.*

The defence is the technical one, that the answer is responsive to the bill. Now what are the allegations? The inquiry in the bill is not as to the consideration of the deeds, but as to the "*arrangement*" under which they were executed. The answers set up new considerations which the defendants must prove. There is no charge that there was any reservation in favor of Grover; this is new matter set up by the answers and must be proved. The deeds are impeached for fraud, and the defendants rely solely upon the answers, which assert that there was some consideration without stating what it is. But, again, the evidence clearly shows that there was collusion between the parties. Grover's affidavit and statement to his schedule is clearly connected with McColm, The lat-

ter was the surety of Grover's provisional trustee, and must have known what was then done, and consulted Grover about it.

The appellee's exhibit B, the lease of the stock, is not proven in any way so as to be competent evidence. But McColm is, at best, a mortgagee, and the appellant, as permanent trustee, is entitled to the possession of the mortgaged property. 5 *Gill*, 138, *Alexander vs. Ghiselin.*

*Charles F. Mayer* for the appellees.

A court of equity, like a court of [law, will not infer] fraud, it must be proved. At *common law* a debtor in failing circumstances may prefer one creditor to another, even to the absorption of his whole estate. There are general principles, *axioms* of the law, which the counsel on the other side must override before he can succeed in this case. The appellant has nothing to complain of except the preference of McColm, this is the extreme injury done, and is the only ground upon which fraud can be inferred. The whole error of the argument on the other side is, that it *assumes* that there is *fraud.*

The bill does not seek to avoid the deeds by impeaching them under the insolvent laws, but simply under the statute of *Elizabeth.* It makes no difference then whether the party was indebted or not, or whether the deeds absorb the whole of the grantor's estate or not. These deeds are *prima facie* evidence for us, they declare a consideration. The possession was consistent with the deeds. The answers are evidence for the defendants, and must be rebutted by testimony, and there is no evidence which supports the charges of fraud in the bill.

McColm knew nothing of what was in the schedule when he made the affidavit as to Grover's residence and signed the bond as surety. The bond was an entirely different paper.

*John Nelson* on the same side.

The bill assails the deeds solely upon the ground that they are fraudulent under the statute of *Elizabeth.* The only ques-

tion then is, are the deeds valid under the statute? There are two grounds upon which they are assailed:—1st. Because there is not a sufficient consideration. 2nd. Assuming a sufficient consideration, because they were executed *mala fide*. On the first point the burden of proof is on the party who alleges fraud. The proposition on the other side is, that where a deed is assailed under the statute of *Elizabeth*, as fraudulent, and the complainant shows indebtedness at the time of the execution of the deed, this throws the burden of proof on the party who seeks to sustain the deed to show that the consideration was sufficient. This is not so, and no case can be found to sustain it. In cases of a voluntary conveyance such would be the case. because such deeds are *prima facie* void, and the mere production of such deeds makes out a *prima facie* case for the *complainant*, and the defendant must show something to take it out of the operation of such a case. Such was the deed in 5 *Gill*, 460. The true principle is asserted by this court in the case of *Faringer*, *Trustee of Ramsay*, *vs. Ramsay*, 2 *Md. Rep.*, 375.

The answer is distinctly responsive to the bill, which alleges fraud, and asks a statement and explanation of the whole transaction. The answer of Grover may be used for McColm though it cannot be used against him. This answer is clear, that McColm paid a fair consideration, and then the only question is, were the deeds made *mala fide?* We stand upon the deeds, and they must show fraud. The proof is all of facts consistent with the innocence of the parties. The deeds were recorded, and the mere retention of the property is no evidence of fraud. There is no evidence that he used the land except in accordance with the agreement, which was, that part of the proceeds should be applied in improvements on the land. The lease, *Exhibit B*, is admitted to be in the handwriting of the parties, and that is all that is necessary to prove it.

The testimony relative to the insolvent papers is foreign to the case. It does not affect McColm, because it cannot be traced to his knowledge. The parol agreement referred to in

the schedule was merged by the deed afterwards executed. But the testimony of Mr. Mayer conclusively proves that the schedule and its contents were never read or made known to McColm.

The principle in *Gardner vs. Lewis*, 7 *Gill*, 404, is not akin to any question presented in this case. That was an attempt to set aside deeds fraudulent *constructively*, not as here for *actual fraud;* the bill there attacked the deeds under the insolvent laws.

*Wallis* in reply.

The chancellor thought there was such a case presented as authorised him to dismiss the bill without costs. What is the *prima facie* case made out? Grover is very largely indebted, sued upon the largest of his responsibilities, and about a month after this suit he makes a conveyance of all his property, real and personal, and remains in possession of it up to the time of this suit. He, in the meantime, applied for the benefit of the insolvent laws, and makes, on oath, a statement that he was to have the property again after a certain time.

The answer of Grover was not relied on in the court of chancery, but the appellees here have relied upon it in argument in their favor, and this opens up his answer to us and we can rely upon it to show fraud which it manifestly does.

Upon whom does the *onus* of proof of the consideration lie? We insist that in the facts of this case, proving as they do, that the grantor was greatly in debt at the time, this burden lies upon the *grantee* to show the sufficiency of the consideration. A debtor may prefer one creditor, but then all creditors are upon an equal footing, and there is no hardship in making the preferred creditor show that he was a creditor, and the consideration of his preference. There is no injustice in this.

The proposition on the other side would require the plaintiff, even in case of actual fraud, to prove a negative, because it makes the deed import absolute verity. Now how can a

party prove that A did *not* on a certain day, pay B a certain sum? Before the act of 1852, the answer responsive to the bill, and the deed, which according to the theory on the other side imports verity absolutely, would close the case against every complainant.

The case in 5 *Gill*, 560, *Worthington vs. Shipley*, was the case of a voluntary deed, but it is a leading case deciding that no distinction exists, under the statute of *Elizabeth*, between voluntary deeds and others. The word *"voluntary,"* the court say, on p. 459, is not in the statute of *Elizabeth*. Even in reference to voluntary conveyances, they say indebtment is *prima facie* evidence of fraud, and puts the *onus* on grantee to prove the *bona fides.* *Bierly and Holtz, vs. Staley,* 5 G. & J., 434, 447. 14 *Johns.* 499, *Sands vs. Hildreth.* 2 *Johns. Ch. Rep.*, 41, 44, 45. The deed of the realty was not made to McColm directly. This deed merely recites that a valuable consideration was paid, but does not state when it was paid, or by whom.

The allegation of the bill is, that the deeds were fraudulent and without consideration, and that the consideration of the bill of sale was colorable. The proper answer to this is, that they were not fraudulent, and if they go a step further they must prove their new matter. These are the general allegations. The special interrogatories nowhere ask the defendants to state what *was the consideration of the deeds?* But simply, what was the arrangement in regard to the deed? And as to the bill of sale, whether the consideration passed at the time? Now the defendants have invoked into the cause the answer of Grover, and this shows that the answer of McColm is false, and there can be no further question whether fraud has been proven or not. These answers are clearly contradictory and conflicting in every particular.

Now as to the question of *mala fides.* The question of law here is, whether the acts of the party, resulting in fraud, will be construed to have intended fraud? The case of *Gardiner vs. Lewis* is conclusive on this question.

Grover states that he had made no agreements or contracts

respecting the lands other than that mentioned in his affidavit affixed to the schedule.   Fraud may be proved by facts and circumstances.   9 *Gill,* 232.   7 *G. & J.,* 175.

Wherever there is a conveyance purporting to be absolute on its face, and there is a secret reservation in favor of the grantor, it is a badge of fraud.   3 *Coke,* 81, *Twyne's case.* The case of *Faringer vs. Ramsay,* was a case of *resulting trust,* and there was there no evidence of indebtedness.

Tuck, J., delivered the opinion of this court.

After having carefully examined the record in this case, we can perceive no reason for dissenting from the opinion of the chancellor.

It is well settled, that a debtor in failing circumstances may prefer one creditor to another, by a transfer of his property made in good faith; and it is equally clear, that if such a transaction be assailed on the ground of fraud, the *onus* of proof is upon the party impeaching the assignment.   The question presented by this record, therefore, is, whether the deeds from Grover to McColm were made *bona fide,* and upon sufficient consideration.   Upon the latter of these points there can be no room for doubt.   Grover was considerably indebted to McColm at the date of the first deed; the property was sold at what appears to have been its value, and was paid for, in part, by discharging a balance due thereon by Grover, and as to the residue, by releasing so much of McColm's claim against him.   As to the property conveyed by the last deed, it is equally clear that it was assigned in payment of advances made by McColm to Grover after the first deed.   The complainant offered no evidence that Grover was not thus indebted to McColm.   But it is insisted that the fact of indebtedness should have been shown affirmatively by the defendants, because there being special interrogatories in the bill on this point, so much of the answers as relates to the consideration is not responsive, but in the nature of new matter.   We cannot concur in this view of the case.   The bill charges, that the first deed "was made without consideration and fraud-

29    v. 3

ulenty, to hinder, delay and defraud the creditors of Grover, and to cover and screen from them the property mentioned in it for his own benefit;" and that McColm received the deed, knowing this to be its design. And as to the second, it is alleged, that the parties thereto were influenced by the same motive, and "that the consideration therein mentioned was merely colorable, and was not paid at the time" of its execution. The defendants were required to answer generally, and special interrogatories were also propounded predicated upon some of these averments. They not only had a right to answer all these allegations, whether specially interrogated or not, but it was incumbent on them to have answered fully, and if they had not it would have been ground for exceptions to the answer. A defendant would be deprived of the benefit which the law gives him of being his own witness as to all matters which he may answer responsively, if the complainant could so frame his bill and interrogatories as to allow certain portions of the answer, (and perhaps the most immaterial,) to be evidence for the defendant, and make new matter of the rest, though responsive as to the subjects really in controversy between the parties. The complainant exhibits these deeds, alleging that they are fraudulent and void as against Grover's creditors. He calls upon the defendants to answer this charge, and insists that this must be done, not by merely denying the fraud, and thus requiring proof thereof from the complainant, but by showing affirmatively what the consideration was upon which the conveyance was executed—a fact, indeed, of which the complainant himself had, by exhibiting the deeds, offered *prima facie* proof. *Faringer vs. Ramsay,* 2 *Md. Rep.,* 365. We have no doubt that in such a case the positive denial in the answers must be met in the usual way— by the oath of two witnesses, or by that of one with pregnant circumstances.

But then, we are told that so many badges of fraud attend this case that the burden of proof is shifted from the appellant to the appellees, and for this purpose reference is made to the insolvency of Grover at the time the deeds were exe-

cuted, the fact that they comprised nearly all his property, his possession thereof from the dates of the conveyances, at a rent that equalled only the interest on the alleged purchase money, and the inconsistencies between the answers of the defendants, and Grover's statement at the time he petitioned under the insolvent laws, as to the character of the deeds, and of his possession of the property.

There is little force in the objection that Grover was insolvent and transferred all his property in payment of this one claim, provided it was done in good faith. Preferences are allowed. They always presuppose that there are creditors against whom the assignment is to operate; and it is generally true, that in such cases the debtors are embarrassed, if not insolvent, yet this cannot affect the validity of the conveyance. Indeed it furnishes the strongest motive to the creditor for requiring security for his claim, or for obtaining payment in property or otherwise. In the case of a deed without consideration the argument now urged applies with great force. *Worthington, et al., vs. Shipley,* 5 *Gill,* 449. And even where there is a debt due from the grantor to the grantee, the amount of the property conveyed compared with the debt intended to be secured or paid, and the number, amount and character of his other debts, may be properly considered in determining the good faith of the transaction towards other creditors. In this case, however, there is nothing to support such an objection.

As to the possession and use of the property by Grover, it may be that McColm did not make a very profitable arrangement in allowing the rents to be expended in improving the estate. But we cannot say that this was evidence of fraud between these parties. One of the the witnesses says, that the farm was like a wilderness when Grover went there, and that he has improved it very much. Having taken an indifferent farm, without houses, fences or any improvements, in payment of a bad debt, he may have been willing to make this arrangement as the best that he could do, with an industrious and attentive tenant as Grover is shown to have been. The agreement itself shows that he held Grover under restraints as to

the timber, buildings and other improvements, which would have been quite unnecessary if Grover had been the real owner of the property, and as far as the record discloses any thing on the subject, his management of the estate has not been inconsistent with the terms of the agreement. It is urged that the lease was originally for five years, but that he has held the land for ten or more. It does not appear that the tenancy has continued on the same terms. It may be that McColm, since the first lease, has been receiving an income from the property remunerating him for what he may be supposed to have lost under that arrangement.

But it is insisted, that this agreement is new matter set up in the answer, and that it is not proved to have been executed on the day it bears date. The defendants are interrogated as to the arrangement made between them about this farm, and whether it was written or verbal, &c. It would, we think, be difficult to show that an answer setting out this paper as the arrangement is not responsive to the allegation and inquiry, and, therefore, to be taken as true in all its parts until disproved. But the agreement is admitted to have been signed by the parties, though the appellant's counsel contends that this admission does not imply proof of the time of its execution. If the handwriting of a party who signs a paper be proved, the contents are also thereby established until the contrary appears. Possession of a bond by the obligee is *prima facie* evidence of delivery and acceptance. 1 *H. & G.*, 418, *Union Bank vs. Ridgely.* Where proof of the handwriting of the obligor was offered on the plea of *non est factum*, although the subscribing witness to the bond was in court and not examined, it was held to be evidence of the signing, sealing and delivery, and should have been left to the jury as *prima facie* proof. *Pannell vs. Williams*, 8 *G. & J.*, 511. See also 1 *Md. Rep.*, 11, *Milburn vs. The State.* There is no reason for saying that the execution and delivery do not import that the instrument is truly dated. If the rule were otherwise no writing could be safely received except in the presence of witnesses.

The supposed discrepancies between the answers and Grover's statement accompanying his schedule of property, cannot avail the complainant. McColm is the party really interested in defeating this suit. Grover's answer, however inconsistent with McColm's or with the proof in the cause, cannot be used against his co-defendant. He might have been examined as a witness, and in this way much perhaps of what he states in his answer might have availed the complainant. The appellant's counsel relied with much stress upon the fact that Grover had made an explanation, at the time of his application for the benefit of the insolvent laws, of the deeds from himself to McColm, from which it is said that they are to be treated as mortgages. There is no evidence to connect McColm with this statement. The proof is positively the other way. Standing alone it is but the declaration of a grantor, made after the conveyance, which cannot be used to defeat or impair the title of his grantee.

The validity of these deeds depends on the intention of the parties defendants. As to their design they have been called on by the complainant to speak, and in such a case, "an answer responsive to the bill, emanating from a party made a witness by the act of the complainant, speaking in reference to the motives and views under the influence of which the transfer in dispute was made, a matter lying necessarily within his own bosom, must be held as conclusive upon the question of intention, unless it is overcome by the testimony of two witnesses, or that of one witness with corroborating circumstances." *Beatty vs. Davis,* 9 *Gill,* 218. And "if there were pregnant circumstances, yet standing alone without the aid of the positive testimony of a single witness, they would be unavailing." *Roberts vs. Salisbury,* 3 *G. & J.,* 433. The complainant relies upon the circumstances disclosed by the record as proof of the alleged fraud. We do not think them sufficient to establish either a want of consideration or of *bona fides,* and affirm the decree with costs.

*Decree affirmed with costs.*