DULANEY, Trustee of STINCHCOMB AND SMALL, *vs.* HOFFMAN, *et al.—December* 1835.

S, on the 27th November, of his mere voluntary motion, delivered to H, a creditor, the *whole* of his property, known to him at the time to fall far short of his debts, for the purpose of securing such of his debts as he owed on notes with endorsers, leaving but a small surplus to be divided among his other numerous creditors. One of those notes fell due on that day, after which he did no business. On the 14th December ensuing, he applied for a discharge under the insolvent laws. HELD, that in the absence of all evidence to the contrary, S must be considered as having on the 27th November, acted under an expectation of being or becoming an insolvent debtor, and with an intent to give an undue and improper preference, and that H, the creditor, must account with the trustee of S, for the proceeds of the goods delivered to him by S.

A violation of the insolvent laws by a transfer of property, under an expectation of being or becoming an insolvent debtor, and with the intent to give an undue and improper preference to a creditor, is in contemplation of law, a fraud upon the insolvent system, and within the jurisdiction of the court of Chancery.

The cases of *Hickley vs. The Farmers and Merchants Bank,* 5th *Gill and Johns.* 377, *and Crawford and others, and Sellman and others, vs. Taylor and others,* 6 *Gill and Johns.* 323, reviewed and confirmed.

APPEAL from Chancery.

The appellant on the 24th of November 1830, exhibited his bill against the appellees *Hoffman, Bend & Co.* and

*Stinchcomb and Small*, charging that the latter having petitioned for, and obtained the benefit of the insolvent laws, on about the 12th of December 1829, he the appellant was appointed their permanent trustee, and duly qualified as such, by giving bond with security. That the said insolvents, on the 27th of November preceding their application for the benefit of the insolvent laws, closed their business, they being at the time indebted to a great number of persons, in an amount considerably exceeding their means of payment; among others to the appellees *Hoffman, Bend & Co.* upon certain promissory notes, the first of which was to become due on the 27th of the same month of November. That on or about the 27th of the said month, *Stinchcomb and Small*, as complainants charge, " with a view, and under an expectation of being, or becoming an insolvent debtor, and with intent thereby to give an undue and improper preference to the said *Hoffman, Bend & Co.* assigned and delivered to them their whole and entire stock of goods, leaving themselves thereby wholly destitute of the means of paying any portion of the claims due their other creditors. That the condition of the insolvents was known to their assignees who colluded with them to obtain a preference over the other creditors. The prayer of the bill is, that the defendants, *Hoffman, Bend & Co.* may be decreed to account with complainant for the value of the property so assigned to them, and to pay the same to him, for distribution among the creditors; and for general relief.

The answer of *Hoffman, Bend & Co.* stated that about the time mentioned in the bill, *Stinchcomb and Small* sent to them voluntarily an invoice of merchandize for sale, with directions that the nett proceeds, when sold, should be applied to the payment of their endorsers, and to the discharge of such of their notes, as other persons were responsible for as endorsers. That, at that time, the respondents held of their paper of that description to the amount of $1232,62, to the satisfaction of which, in pursuance of the said voluntary directions of *Stinchcomb and Small*, they applied the proceeds of the merchan-

dize; and that after doing so, and paying other notes, and responsibilities of the parties of the like nature, a small balance remained in their hands, which they afterwards paid to the complainant, as their trustee.   That upon making this application of the funds arising from the merchandize, the respondents gave up the notes to the endorser, thus discharging him, and rendering it impossible consequently, to place them in the same situation of security they occupied, before such application was made.   That at the time *Stinchcomb and Small* were indebted to them in the further sum of $850 on open account, for which the respondents have received neither satisfaction or security.   That although they knew *Stinchcomb and Small* were embarrassed, they did not know to what extent; or that they would be compelled to take the benefit of the insolvent laws, or that they contemplated, or intended so doing, or that they were actually insolvent; and they positively deny the allegation in the bill, that they colluded with them in any way, to get for themselves a preference over the other creditors.

The answer of *Stinchcomb and Small* admitted that they were compelled from pecuniary embarrassments to discontinue their business on the 27th of November 1829, and that on the 12th of December of the same year, they applied for, and obtained the benefit of the insolvent laws.   That at the period first mentioned, *Hoffman, Bend & Co.* held their paper, as set forth in the bill, and that they delivered to them their entire stock in trade, and property of every description, (which they admit was inadequate to the payment of all their debts at fair prices) for the purpose of selling the same, and applying the proceeds in the manner set forth in the answer of *Hoffman, Bend & Co.*, but they deny expressly, that they assigned the same to them, or colluded with them, for any improper, or unfair purpose, or to give to said *Hoffman, Bend & Co.* an undue preference over their other creditors.

After a commission had been issued, and returned with proof, *Bland* Chancellor, on the 24th of January 1834, passed

his decree, dismissing the complainants bill with costs ; who thereupon appealed to the Court of Appeals.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, ARCHER, CHAMBERS, and SPENCE, Judges.

DULANY and BELT, for the appellant contended—

1. That the transfer by *Stinchcomb and Small*, to *Hoffman, Bend & Co.* was made under an expectation of becoming insolvent debtors, and to give them an undue preference. This intention is not necessarily derivable from the declarations of the parties themselves, but may be inferred from other circumstances, such as heavy indebtedness, and slender means, and the transfer of the whole of his estate.   The same circumstances in *England* indicate an intention to become a bankrupt, and in fact render the party a bankrupt.   *3 Peters* 365.

In the present case, the parties are precisely in this situation.   They were largely indebted by their own confession, to an amount exceeding the value of their whole means, and in this predicament, only a few days before applying for the benefit of the insolvent laws, they single out a particular class of creditors, and transfer their whole estate for their payment, to the unavoidable injury of all others.   Is it possible to suppose, that they could have hoped to escape an application for the insolvent laws under such circumstances ?—was such conduct calculated to induce forbearance on the part of the injured creditors ?   It certainly was not, and the parties guilty of it, could have looked to the insolvent laws, and the insolvent laws alone, for refuge.

HOFFMAN and JOHNSON, for the appellees. '
A preference of this description cannot be set aside, unless it is followed by an actual application for the benefit of the insolvent laws, because, being certainly good against the party making it, there would be no one to call it in question.   *Hickley vs. The Farmers and Merchants Bank,* 5 G. and J. 377.

The question in this case is, whether on the 27th November 1829, these parties intended to take the benefit of the law. Not whether they entertained a mere apprehension or belief, that insolvency *de jure* might occur, for if that was the rule, every conveyance by a party not having the means of paying all his debts, would be void, and such an apprehension must necessarily exist in such circumstances; but whether there was at that time, an intention *in point of fact*, to seek protection under the insolvent laws. *Crawford et al, vs. Taylor et al,* 6 G. and J. 323. *McMechens Lessee vs. Grundy and Thornbury,* 3 Harr. and Johns. 185. *Kolb vs. Whitely,* 3 G. and J. 188.

In the case now before the court, there was no transfer or assignment by the petitioners. They sent their goods to the appellees, under a special contract, by which, after selling them, and deducting commissions and expenses, the nett proceeds were to be applied to the payment of their endorsed paper. This contract frees the transaction from the operation of the insolvent laws.

2. But at all events, the court will not take the proceeds of this property from the appellees, without restoring them to the situation they occupied before the application of it. They then held the paper of the insolvents, with responsible endorsers—that security they have surrendered, and justice requires, as there is not a tittle of evidence of fraud or collusion against them, that they should be placed in *statu quo,* and for that purpose the endorsers should be brought in as parties.

BUCHANAN, Judge delivered the opinion of the court.

This is not like the cases of *Hickley vs. The Farmers and Merchants Bank,* 5th Gill and Johns. 377, and *Crawford and others, and Selman and others, vs. Taylor et al,* 6 Gill and Johns. 323, cited by the defendants counsel.

The question in each of those cases, was the same that is presented in this, but the circumstances and proof attending the transactions, were essentially different.

The object in those cases respectively, (as in this) was to shew, that the insolvent debtors have acted in the transactions objected to, " with a view, or under an expectation, of being or becoming an insolvent debtor, and with an intent thereby, to give an undue and improper preference," &c. in violation of the act of 1816, ch. 221, sec. 6.

In the first case, *Hickley vs. The Farmers and Merchants Bank,* for want of other proof of the intention, and views of *Clagett,* the insolvent debtor, the complainant thought proper to make him a witness; who, on his examination swore, that when he confessed the judgment to the bank, he had not the slightest idea of taking the benefit of the insolvent laws, and had not contemplated such an alternative, not having thought on the subject; but that, at the time, he had hoped to be able *to settle with his creditors. And the decision was made,* upon his positive evidence, there being no other proof in the cause, sufficient to controul or impeach his statement. Not but, that in cases of that description, the intent might be established by facts and circumstances, as in other cases. It appeared moreover, that the judgment was confessed, at the instance of the bank.

The character of the transaction involved in the case of *Crawford et al, vs. Taylor et al,* as disclosed by the facts and circumstances surrounding it, is the converse of this, in its material parts. The transfer of his goods by *Ford* the insolvent debtor, was not the result merely of his own will. It was not a voluntary transfer of his own motion to a favourite creditor selected by himself, for the partial purpose of giving him a preference to other creditors; nor was it a transfer of all his property. But it was made on the pressing and urgent demand of the *Crawfords,* of whom he had obtained a loan of money, upon a solemn pledge to secure, that, and other advances, whenever, and in whatsoever manner, they might demand it to be done. It was done too, in fulfilment of the previous pledge, at the time, and in the manner prescribed by them, by a transfer of property not exceeding in value, the amount of the loans, leaving other debts to them unsatisfied.

The transfer to *Sellman,* was made under similar circumstances, with the exception only, that there was no proof of a similar previous pledge.    Nor was there any evidence in relation to either, that he at the time expected or intended to take the benefit of the insolvent laws.  He denied it in his answers to the bills, and in his examination before the commissioners. His petition for the benefit of the insolvent laws, was more than seven months after the transfers, and the proof was, that during the whole of that time, he was engaged in efforts to make arrangements with his creditors, and keep himself from being taken in execution, and did in fact, adjust the most pressing claims against him, and that the application was only made, after all hope of being able to compromise with the rest of his creditors, was at an end.

In the case now before us, it appears, that the transaction which is impeached was at the mere voluntary motion of *Stinchcomb and Small,* themselves, the insolvent debtors, covering the whole of their property, known to them at the time, to fall far short of their debts ; for the purpose of securing such of their debts, as they owed on notes with endorsers, leaving but a very small surplus, to be divided among their other numerous creditors, without a request even or suggestion of the creditors, or endorsers on those notes, or any solicitude on their part.    That *Hoffman, Bend & Co.* were the holders of five of such notes, the first of which only fell due on the 27th of November 1829, the day of the transaction, and the rest at different periods, before and after the 14th of December 1829, when *Stinchcomb and Small* obtained the benefit of the insolvent laws, only seventeen days after the transaction ; that their note to *Campbell and McIlvaine,* which was excluded from the arrangements (not being endorsed) was at the time, and had for some time before, been due and lying over at bank.    That they closed their business on the 27th of November 1829, the day on which the arrangement was made, by which they stripped themselves of their entire stock in trade, comprehending their whole property, both joint and several, and that from that day, they never made an

effort to adjust any of their other debts, or in any way to compromise with, or appease any of their other creditors.

Here then we have a case of debtors, in a state of actual and total insolvency, closing their business, and on the same day, voluntarily transferring the whole of their property, for the purpose of securing a portion of their creditors, and endorsers (selected by themselves) on notes not then due, to the exclusion of other creditors, on whose claims they were liable at any moment to be sued; and in seventeen days afterwards, taking the benefit of the insolvent laws, without having sought to prevent their being sued, by any attempt to compromise, or in any way to adjust the claims of any of the other creditors.

The proximity of their application for the benefit of the insolvent laws, to the time of the transfer, is not of itself conclusive of their views or expectations at the time of making the transfer. *But it is a circumstance worthy of being* considered, in connexion with the other facts and circumstances in the cause; and taken altogether, the mind is led to the conclusion, that the transfer was made, with a view or under an expectation of taking the benefit of the insolvent laws. What else, than the being reduced to the necessity of doing so, could have been expected? What reasonable expectation could they have had of being exempted from liability on account of their debts, by creditors, to whom others had voluntarily, and of their own seeking, been preferred? and without such exemption, what other means of getting rid of their liabilities was left to them, than an application for the benefit of the insolvent laws? Their stripping themselves of all their property for the benefit of the preferred creditors, without the pretext of exertion, or of being pressed to do so, and without any attempt to compromise, or in any manner to adjust their other debts, could not have the effect to invite to forbearance, but was calculated to incite the other creditors, to resort to harsh measures, which it was only reasonable to expect. And in the absence of all evidence to the contrary, they must be considered, as having acted under an expectation

of that, which was the reasonable, and most probable consequence of the act; leaving them no alternative, but to lie in gaol, or petition for the benefit of the insolvent laws; and with a view to the latter, as it is not reasonable to suppose, that they acted with a view to the former alternative. Knowing too, that destitute of funds, they could not recommence business to advantage, with the weight of their unsatisfied debts pressing upon them, from which, under the circumstances in which they were placing themselves, they could have had but little expectation of being relieved in any other way. And the very fact, of voluntarily selecting favoured creditors, at the moment of closing their business, in a state of utter and hopeless insolvency, is evidence of the intent to give an undue and improper preference, by excluding the other creditors from an equal participation? or why else, was a preference not asked for given?

But that is not all; the bill charges, that the goods were delivered to *Hoffman Bend & Co.* "with a view, or under an expectation, of being or becoming insolvent debtors, and with an intent thereby to give an undue and improper prefer ence"—which is not denied by *Hoffman, Bend & Co.* in their answer; and *Stinchcomb and Small* in their answer, which is responsive to every other part of the bill, pass by altogether that allegation, which leaves the impression, that it was not answered, because it could not with truth be denied. The allegation it is true, is not evidence, but in the absence of all denial, we think it is sufficiently sustained by the facts and circumstances in the cause—made the more strong, by the circumstance, that *Stinchcomb and Small*, avoiding all notice in their answer, of that allegation, expressly deny the immediately following allegation, in the bill, "that *Hoffman, Bend & Co.* colluded with them to *gain* an undue preference."

It appears from the evidence of *Harris*, and of *Stinchcomb*, who were examined under a commission, that by the arrangement with the defendants, the balance of the proceeds of the goods, after discharging the endorsed notes, was to go among the general creditors; and *Harris* says, "he heard some

mention made about the balance going to a trustee," which taken in connexion with every thing else presented by the record, leaves no room in our minds, for the admission of a doubt, that *Stinchcomb and Small* contemplated the taking the benefit of the insolvent laws.

No other interpretation it seems to us, can well be given, to the mention made under such circumstances, of the balance intended for the general creditors going into the hands of a trustee.

The prayer of the bill is, that the defendants be made to account with the appellants, for the value of the goods, and to pay the same over to them, to be distributed among the creditors, and for general relief. We think the decree dismissing the bill must be reversed, and the defendants be made to pay to the appellants the net amount, for which the goods were sold at auction, according to the account of sales exhibited in the record, and will sign a decree accordingly.

The objection raised to the jurisdiction of the court of Chancery is without foundation, the alleged violation of the insolvent laws, being in contemplation of law, a fraud upon the insolvent system.

With respect to the allegation in the bill, that *Hoffman, Bend & Co.* colluded with *Stinchcomb and Small*, to gain an undue and improper preference, we think it is not supported by any evidence in the cause.

DECREE REVERSED WITH COSTS IN BOTH COURTS.