Alexander and Dulaney for Complainants.
Nelson and Donaldson for Defendants.

---

STEWART, PERMANENT TRUSTEE OF JOHN L. AND WILLIAM L. HAMMOND

vs.

THE UNION BANK OF MARYLAND, AND McCORMICK, ADMINISTRATOR OF McCORMICK.

July Term, 1847.

[INSOLVENT DEBTOR—UNDUE PREFERENCE.]

John & William Hammond, partners, being indebted to the Union Bank in the sum of $5000, on the 21st of February, 1832, gave their note for the same at sixty days, in the partnership name, payable to the Bank in its corporate name, which was secured by the pledge of sixty-four shares of the stock of the bank, standing in the name of James McCormick. This not being paid at maturity, and the partnership in the meantime being dissolved, on the 24th of April following, they gave a new note, in their individual names, payable to the cashier of the bank at twenty-eight days, which became due on the 25th

of May, and on the 25th of June, 1832, was paid by said McCormick with money which he admits, in his answer, he received from the Hammonds two days before, but, as he avers, with no knowledge of their business or indebtedness. The Hammonds petitioned for the benefit of the insolvent laws in September and October, 1832. The complainant seeks the repayment of this $5000, on the ground that it was paid to the bank in fraud of these laws. John L. Hammond, one of the partners, and the only witness in the case, proved that, about the 21st of May, 1832, when they had not available means to pay their debts, an arrangement was made by witness, his brother and clerk, and said McCormick, to pay the bank the note in question out of bills due the firm. That witness objected to this arrangement, because they expected to compound with their creditors, and he did not wish to give a preference to one over another, but to make an equal distribution of assets among their creditors. It was HELD—

That this proof was not sufficient to establish that this preference was given with a view, and under any expectation, on the part of the Hammonds, of taking the benefit of the insolvent laws, and was not, therefore, void under the insolvent system of this state.

This transaction, occurring prior to the act of 1834, chap. 293, must be shown to be void, if void at all, under the act of 1812, chap. 77, sec. 1, or the act of 1816, chap. 221, sec. 6.

At common law, a debtor in failing circumstances has an unquestionable right to secure one creditor to the exclusion of others, either by payment or a *bona fide* transfer of his property. The *onus probandi* is therefore upon the party who seek to disturb such preference to show that it is prohibited by our insolvent system.

The vitiating intent may be established by circumstantial proof: but such proof is entitled to less influence when it is manifest that direct evidence upon the question was within reach.

THE CHANCELLOR:

The bill in this case seeks to compel the defendants, or one of them, to pay to the complainant, as the permanent trustee of the Hammonds, the sum of $5000, which it alleges was paid to the bank in fraud of the insolvent laws.

It appears that the Hammonds, as partners in trade, became indebted to the bank, for money borrowed, in the sum of $5000, for which, on 21st of February, 1832, they gave their note, signed in the partnership name, payable to the bank, by its corporate name, sixty days after date; that this note not being paid, and the partnership being dissolved, a new note, signed by the partners in their individual names, was given at its maturity, the 24th of April following, payable to the cashier of the bank in twenty-eight days. That when the first note was

given, its payment was secured by the pledge of sixty-four shares of the stock of the bank, owned by and standing in the name of James McCormick, the intestate of the defendant, John E. McCormick. The last note became due on the 25th of May ensuing its date, but remained unpaid until the 25th of June following, when it was paid to the bank by McCormick, to whom the stock pledged for its security was released, and the note surrendered. The original bill, which was filed on 7th July, 1834, charged that the Hammonds, being embarrassed in their circumstances, and insolvent at the maturity of the first of the notes, were unable to pay it, and that their condition of insolvency continuing until the note given in renewal matured, they paid it with a view, and under an expectation, of being or becoming insolvent debtors, and with intent to give to the bank an undue and improper preference over their other creditors. When the answer of the bank came in, on the 3d of November, 1834, disclosing the connection of McCormick with the transaction, an amended bill was filed, with the leave of the court, in which, among other things, it was charged, that if he, McCormick, did make the payment, he was furnished with the means for that purpose, by the Hammonds, at a period when they had a view or were under an expectation of being, or becoming, insolvent debtors, and with intent thereby to give to said McCormick an undue and improper preference. The answer of McCormick, the intestate, which was filed 14th July, 1835, admitted that the money with which he paid the bank, and relieved his stock, which had been hypothecated as security, was placed in his hands by the Hammonds, for that purpose, two days before he made the payment, and that he had no knowledge of the business or engagements of the Hammonds, or who were their creditors at the time of their application for the benefit of the insolvent laws.

It appeared by an agreement signed by counsel, that John L. Hammond petitioned for the benefit of the insolvent laws, on the 15th of September, 1832, and was finally discharged on the 2d of February, 1833; and that William L. Hammond petitioned on the 15th of October, 1832, and was discharged on

the 2d of February, 1833; and that they filed lists of debts, due by them as partners, to an amount exceeding $40,000, and debts due to them, to the amount of $14,161 56.    That John L. Hammond returned a list of household furniture, mortgaged three years before to a Mrs. Robinson, and also to McCormick on the 21st of February, 1832, for money borrowed.    It also appeared, that William L. Hammond died in the year 1838. McCormick, the intestate, having died in the year 1841, a bill of revivor was filed against his administrator, one of the present defendants, on the 5th February, 1846, which was answered by him on the 18th of July, 1846.

The only witness examined under the commission was John L. Hammond, sworn on the part of the plaintiff, who proved that the partnership was dissolved in the winter or spring of 1832, at which period he is unable to speak of its solvency. That the firm did not expect to stop payment at the time of its dissolution; but that being disappointed in not receiving $20,000 which McCormick, the father-in-law of William L. Hammond, had promised to loan them, their notes laid over, he thinks, on the 21st of May, 1832; that they had not available means to pay their debts, but that they had bills receivable, out of which, he understood, a provision was made to pay to the Union Bank the note in question.    This arrangement was made by the deponent and brother, (William L. Hammond,) their clerk, and the said McCormick.    That deponent objected to the arrangement so made, because they expected to compound with their creditors, and he did not wish to give a preference to one over another; but to make an equal distribution of their assets among their creditors.

The Hammonds are not made parties, and we are without the benefit of the light which their answers would shed upon the question, of the view and expectation with which the act complained of was done; and in the examination of John L. Hammond, the plaintiff's witness, no interrogatory was put to him, calculated to draw information from him upon that point.

It is not contended, in this case, that the transaction by which the debt to the bank was paid, can be impeached upon

any other ground than as being condemned by our insolvent system; because, independently of that system, and according to the common law, there can be no doubt of the power of a debtor to secure one creditor to the exclusion of others, either by a payment, or *bona fide* transfer of his property.

The question, then, and the only question to be considered, is, so far as this view of the subject is concerned, was the act done by the Hammonds "with a view or under an expectation of being or becoming insolvent debtors, and with an intent thereby to give an undue and improper preference," or, in other words, as those terms have been expounded by the Court of Appeals, was the act done with a view or under an expectation of taking the benefit of the insolvent laws ?

The question does not appear to me to be free from difficulty; but after a very attentive consideration of the pleadings and proofs, I do not think the plaintiff has succeeded in making out such a case as to justify this court in granting him the relief he asks for.

The transaction, if void at all, must be shown to be within the act of 1812, ch. 77, sec. 1, or 1816, ch. 221, sec. 6; the previous laws, passed in 1805 and 1807, do not apply to it, because they leave untouched the validity of a deed or transfer given *bona fide* by a debtor to a favored creditor, though they visit upon the debtor giving such a preference, the penalty of withholding from him the benefit of the law. Nor does the act of 1834, ch. 293, comprehend this case, because that act was passed subsequently to the application of these parties, to be discharged under the insolvent laws. We are, therefore, confined to the acts of 1812 and 1816, and are to see whether the facts of this case bring it within the provisions of those laws, as they have been construed by the courts.

Debtors in failing circumstances having an unquestionable right at the common law, to prefer one creditor to another, it is incumbent on a party who attempts to disturb such a preference, to show by evidence that it is prohibited by our insolvent system. The *onus probandi* is upon him; and although the vitiating intent with which the preference is charged to have been

made, may, like any other fact, be established by circumstantial evidence, still it is believed that such proof is entitled to the less influence, when it is manifest, that direct evidence upon the question was within reach. Such was the case here. John L. Hammond was upon the stand as the plaintiff's witness, and would no doubt have answered this question if it had been asked him.

But, independently of this view, I do not think it can be fairly inferred from the proof that this preference was given with a view, and under an expectation on the part of the Hammonds, of taking the benefit of the insolvent laws. Assuming it to have been shown, that at the date of the transaction, they were unable to pay their debts; that this was known to them and to McCormick and the bank, still it does not follow that they looked to an application for the benefit of the insolvent laws, as their only refuge. All these circumstances were conceded to have been proved in the case of *Crawford & Sellman* vs. *Taylor*, 6 *G. & J.* 323, and yet the Court of Appeals, said that they did not think the preference in that case, was given with such a view or expectation.

The witness, John L. Hammond, says, in this case, that he objected to the arrangement by which the bank was paid, because they expected to compound with their creditors. Now it seems to me, that an expectation to compound with creditors, and an expectation to escape from them by applying for the benefit of the insolvent laws, are very different things, and that both could not exist at the same time. What may have been the expectation of Wm. L. Hammond, the other partner, we are precluded from knowing satisfactorily : because, though the suit had been depending for years prior to his death, he was not examined. The case, therefore, turns upon the evidence of John L. Hammond, and the facts agreed upon by counsel, and I am not able to see in them, circumstances which satisfy me, that at the time of the transaction, the Hammonds contemplated applying for the benefit of the insolvent laws.

I have looked carefully into the cases of *Hickley* vs. *The Farmers and Merchants Bank*, 5 *G. & J.*, 377. *Crawford & Sell-*

*man* vs. *Taylor*, 6 *G. & J.*, 323. *Dulaney* vs. *Hoffman*, 7 *G. & J.*, 170, and *Cole* vs. *Albert & Renge*, 1 *Gill*, 412. And in view of the principles settled in them, and the influence which the Court of Appeals has given to the evidence upon which the several complainants in those cases have relied to vacate preferences, alleged to be void under our insolvent laws, I should not feel myself warranted in pronouncing against the transaction impeached by this bill.

It must, therefore, be dismissed, though considering it to be a case by no means free from difficulty, it will be dismissed without costs. The opinion which I have formed upon the facts, renders it unnecessary to decide the legal questions which have been so well argued by the counsel on both sides.

---

C. F. MAYER, DAVID STEWART and T. S. ALEXANDER for Complainants.

J. P. KENNEDY and R. JOHNSON for Defendants.

[The decree in this case was affirmed by the Court of Appeals.]