HENRY P. BROOKS, PERMANENT TRUSTEE
OF HENRY P. THOMAS,
vs.
HENRY P. THOMAS AND JOHN H. T. JEROME.

}  DECEMBER TERM, 1852.

[INSOLVENT LAWS—EFFECT OF ANSWER.]

WHERE the trustee attempts to vacate an assignment of the insolvent, as in violation of the insolvent system, he is not required to offer direct evidence of the facts upon which he relies, but may avail himself of circumstances to establish the intent with which the assignment was made, and if they be sufficiently strong, it will be set aside.

But where the answer or evidence of the insolvent denies such intent, the difficulty of making it out is materially increased, and nothing short of circumstances of the strongest description will justify the Court in disregarding such answer or evidence.

There must be both the intent to prefer, and to take the benefit of the insolvent laws, or the transfer will not be disturbed.

To avoid a transfer or payment, under the 1st section of the Act of 1834, ch. 293, *actual notice* must be brought home to the preferred creditor of the insolvency of the debtor; mere technical or constructive notice is not sufficient.

[The facts of this case are stated in the opinion.]

THE CHANCELLOR:

By the bill in this case, which was filed on the 15th of October, 1850, it appears that the defendant, Thomas, petitioned for the benefit of the insolvent laws on the 5th of February, 1849, and that the complainant was appointed and qualified by giving bond as his permanent trustee in September, 1850.

The proceedings show that Thomas, the insolvent, and one Spotswood Childress, commenced business as grocers in the city of Baltimore in September, 1847, and continued to carry it on until March, 1848, when they dissolved, and Childress retired, and took with him the capital which he put in, about $600, and his share of a small estimated amount of profit. No capital was furnished by Thomas, but he brought

into the concern about $600 worth of groceries, which had been purchased on credit from the defendant, Jerome, who charged them to the firm. Thomas continued to carry on the business by himself until some time in September or early in October, 1848, when he failed, being at the time utterly insolvent. Very soon after this, that is to say, on or about the 7th of October of that year, Thomas proposed to a portion or all of his creditors, to make a general assignment for their common and equal benefit, of all his assets, provided they would release him from responsibility. This the defendant, Jerome, agreed to do, but some or all the other creditors refusing, the assignment was not made, and the arrangement abandoned. Mr. Jerome, in his answer, states that the proposition by Thomas to him was made about September, 1848, he being at that time a creditor to the amount of $2,130, but the proof of Randall shows that the proposition to Bansemer, a creditor, was made about the 7th of October, 1848. Upon the abandonment of this proposition, and in a few days after the last-mentioned date, Thomas made sale of his entire stock of goods, and having paid a note for $187 25, which was endorsed by Jerome, and discounted at the Western Bank of Baltimore, he paid over to Jerome the whole residue of the proceeds of the sales, amounting, with other moneys, to $990 in cash, and transferred to him notes and furniture (the latter worth about $75) amounting to $1,010. I am quite satisfied from the proof that the money, moneyed securities, and property paid, assigned, and delivered by Thomas to Jerome, constituted, with a very inconsiderable exception, everything he possessed. In fact, it may perhaps be safely stated, that he reserved nothing which, under our insolvent laws, he could be required to surrender for the benefit of his creditors, and, in fact, when he petitioned on the 5th of February, 1849, he returned no assets of any description whatever.

The bill assails the preference given to Mr. Jerome upon two grounds: 1st, that it was given with a view and under an expectation on the part of Thomas, of taking the benefit of the insolvent laws, and with intent thereby to give an undue

and improper preference to this favored creditor; and 2d, that the payment, assignment, and delivery was made after Thomas was insolvent, and when Jerome knew of his insolvency, and when the former could have had no reasonable expectation of being able to relieve himself from his liabilities otherwise than by applying for the benefit of the insolvent laws, in other words, that the case comes within the provisions of the Act of 1834, ch. 293, and the preference condemned by that Act.

It is, of course, quite unnecessary to repeat what has been so often said, that a trustee of an insolvent debtor attempting to vacate an assignment as made in violation of the insolvent system, is not required to offer direct evidence of the facts upon which he relies, but he may avail himself of facts and circumstances to establish the intention with which the assignment was made, and if they be sufficiently strong, the assignment will be set aside. Such was the opinion of the Court of Appeals in *Dulany* vs. *Hoffman*, 7 *G. & J.*, 170, and the proposition is not to be questioned. *Glenn* vs. *Baker*, 1 *Md. Ch. Decisions*, 73; *Powles* vs. *Dilley*, 2 *Ibid.*, 119.

But though the plaintiff, in cases like the present, is not required to produce direct evidence that the insolvent, at the time of the assignment, intended to apply for the benefit of the insolvent laws, but may rely upon facts and circumstances to establish the intent, it is most manifest that the difficulty of making out the intent is materially increased when the insolvent, either by his answer, if he be made a defendant, or by his evidence, if he be examined as a witness, denies such intent, and I am aware of no case where the intent has been established in opposition to such answer or evidence. The motives which may influence a party at the time of doing an act, are generally so exclusively within his own knowledge, that it is extremely difficult to attribute to him one different from that which he avows. Indeed, if the avowal be made under the obligation of an oath, as he cannot be mistaken upon such a subject, the imputation of a contrary intention carries with it the imputation of wilful and deliberate perjury. In *Hickley* vs. *The Farmers and Merchants' Bank*, 5 *G. & J.*,

377, in which the complainant examined the insolvent as a witness, who testified that he did not confess the judgment complained of with a view or under an expectation or intention to take the benefit of the insolvent laws, the Court of Appeals not only refused to grant the relief prayed by the bill, but stopped the counsel who was to have argued for the appellee, the preferred creditor. And in *Dulany* vs. *Hoffman*, 7 *G. & J.*, 170, it may perhaps be fairly inferred that, notwithstanding the very strong circumstances of that case, to demonstrate the intention to take the benefit of the insolvent laws, and to give the improper preference, the plaintiff would have failed if the answer of the insolvent had expressly denied the allegation of the bill charging such intention. The language of the Court at page 178, after quoting the allegation of the bill in reference to the intention, is " which is not denied by Hoffman, Beard and Co. in their answer, and Stinchcomb and Small (the insolvents), in their answer, which is responsive to every other part of the bill, pass by altogether that allegation, which leaves the impression that it was not answered, because it could not with truth be denied." " The allegation, it is true, is not evidence, but in the absence of all denial, we think it is sufficiently sustained by the facts and circumstances in the cause, made the more strong by the circumstance that Stinchcomb and Small, avoiding all notice in their answer of that allegation, expressly deny the immediately following allegation in the bill, that Hoffman, Beard and Co. colluded with them to gain an undue preference."

Although, therefore, the answer or testimony of the insolvent, if he is examined as a witness, may be overcome, even with regard to his intent in giving one creditor a preference over others, by facts and circumstances, still the attempt to do so is surrounded by impediments of the most formidable character, and nothing short of circumstances of the strongest description will justify the Court in disregarding the answer or deposition of the insolvent. It is not sufficient that an intent to give the favored creditor an undue preference is shown. It must also be shown that at the time the transfer

was made, the party making it intended to take the benefit of the insolvent laws. Both intents must be found to exist, or the transfer will not be disturbed. The cases decided upon the Acts of 1812, ch. 77, and 1816, ch. 221, all concur in this, and the question, therefore, in this case is, whether at the time the transfer was made to Jerome, Thomas, the insolvent, intended not only to prefer him over his other creditors, but to apply for the benefit of the insolvent laws?

The bill charges both intents, and the answer of Thomas, in the most direct and unequivocal terms, denies the allegation that he made the transfer and payment to Jerome with a view and under an expectation of being and becoming an insolvent debtor. This denial is repeated more than once, and is couched in terms as express as our language will afford. Are the facts and circumstances of the case powerful enough to overthrow it? If they are, the answer must give way to them, though the alternative is the conclusion that the respondent has deliberately denied on oath a statement which he knew to be true.

It is not enough to say that Thomas, the insolvent, at the time he made the transfer, could have had no reasonable expectation of being exempted from liability or execution for or on account of his debts, and without applying for the benefit of the insolvent laws. The absence of grounds for such reasonable expectation might bring the case within the 1st section of the Act of 1834, ch. 293, and vacate a preference made to a creditor having notice of the insolvent condition of the debtor. We have nothing to do, so far as this part of the case is concerned, with the reasonableness or unreasonableness of the expectation of the debtor. His expectation that his creditors would forbear with him, may be wholly absurd. The circumstances may be such that most men would look to a resort to the insolvent laws for relief, as the only probable alternative left them. But, nevertheless, if the insolvent himself making the transfer, did not make it with intent to take the benefit of the insolvent laws, and also to give an undue and improper preference to the favored creditor, the transfer will stand,

being no more than the exercise of his common law right to secure one creditor to the exclusion of others.

It has already been stated that some short time before the transfers were made to Jerome, Thomas had proposed to his creditors to make an assignment for their common and equal benefit, provided they would release him, and that they or some of them refusing, he transferred to Jerome. But he says in his answer that he did not expect to be compelled to petition, as his debts, exclusive of that due Jerome, were so small, he did not think his creditors would force him to take the benefit of the insolvent laws, but he believed they would give him time, and save him from that necessity. This may have been an unreasonable expectation on the part of Thomas, but is it so improbable and unnatural as to justify the Court in concluding that he did not entertain it, though, under the solemn sanction of an oath, he says he did. His debts, exclusive of that due Mr. Jerome, did not exceed $600, and it may be in view of his relations between them, which appear to have been of the most friendly character, that he looked to Mr. Jerome to put him in a way to satisfy them. It would be vain to attempt to deny that there are strong circumstances of suspicion in this case, and but for the explicit denial of the answer of Thomas upon the point of intention, I should have concluded, from all the circumstances, that he intended to do that which seems to me would necessarily follow from his conduct. It was unquestionably calculated to incense his creditors, and he might well have supposed that they would resort to coercive measures against him, and that in that event the insolvent laws were his only refuge from imprisonment. But he swears otherwise, and I do not find in the facts and circumstances, those strong and controlling considerations which should overthrow what a party says upon oath in regard to his own intentions.

The next inquiry is, whether the transfer was made under circumstances which bring it within the provisions of the first section of the Act of 1834, ch. 293 ? And with regard to this question, I should answer it at once in the affirmative, and de-

cree relief accordingly, but for the proviso to the section, which makes it inapplicable to the case of a creditor "who shall appear not to have had notice of the condition of insolvency of the debtor." This Act, in its first section, was, it is presumed, designed to alter the previous laws upon the subject to which it relates in *three* particulars. First, it was intended to embrace and render void *payments eo nomine*, made by an insolvent debtor to his creditor, under the circumstances mentioned in the Act, which payments, according to the decision of the Court of Appeals, in *Stewart, trustee*, vs. *The Union Bank*, 7 *Gill*, 439, were not comprehended in the earlier legislation. Second, to reach and invalidate preferences given to favored creditors, upon the request or solicitation of the latter, which, in the judgment of the same Court, were not within the anterior laws. See the case of *Crawford & Sellman* vs. *Taylor*, 6 *G. & J.*, 323. And third, not to require as indispensable to avoid the preference, that it should be made with a view, or under an expectation of taking the benefit of the insolvent law, but to substitute therefor the absence of a reasonable expectation of being exempted from liability, or execution for or on account of his debts, without applying for the benefit of the insolvent laws.

Now I should certainly say, that the defendant, Thomas, could, in this case, have had no reasonable expectation when he made the transfer to his co-defendant, of exemption from liability, or execution for or on account of his debts, but by a resort to the insolvent laws. His conduct in making that transfer was unquestionably calculated to exasperate his other creditors; and as by it he divested himself of all means of paying them, he could not reasonably rely upon their forbearance. He says in his answer, to be sure, "that as the amount he owed, exclusive of his debt to Jerome, was small, he did not think his creditors would force him to take the benefit of the insolvent laws, but he believed they would give him time and save him from that necessity." But this, I think, was an unreasonable expectation, and I should not hesitate to condemn the transfer, if I were convinced that Mr. Jerome had notice

at the time of the insolvent condition of Thomas.   It is to be observed, that actual notice must be brought home to Jerome, derived from a knowledge of the condition of Thomas, and not a mere technical or constructive notice.   This is the construction put by the Court of Appeals upon the Act of Assembly in question, in the case of *Cole* vs. *Albers & Runge,* 1 *Gill,* 412, and of course this Court, if disposed so to do, is not at liberty to construe it differently.

The bill here charges that the transfer to Jerome was made after Thomas was insolvent, and after Jerome was aware of his insolvency ; and one of the special interrogatories is framed with a view to extract from him his knowledge in regard to the condition of the affairs of Thomas at the time of the proposition to assign for the benefit of all the creditors, or before or afterwards.   The answer of Jerome admits that Thomas, about September, 1848, called on him, and made the proposition referred to, which he assented to, Thomas then assuring him that he was able to pay all his creditors in full, and that the respondent did not know or believe that Thomas was insolvent, or unable to pay his debts.   Again, "respondent admits that Thomas failed in his business, but expressly denies that at the time he received the money and effects from said Thomas, as above stated, that he knew or believed that he was insolvent, or contemplated applying for the benefit of the insolvent laws ;" and this denial is afterwards repeated, in a subsequent part of the answer, in terms equally explicit.

Now notwithstanding the ingenious and plausible views which have been pressed upon me by the counsel for the complainant, I cannot bring myself to believe that the defendant, Mr. Jerome, did know what upon the solemn sanction of an oath he says he did not know.   If, to be sure, there was evidence in opposition to the answer, which, according to the well-settled rule of this Court, would be sufficient to discredit it, it would have to give way to the evidence, and a decree against him would pass accordingly.   But I do not find in the record that description of proof.   In the language of the Court of Appeals, in *Cole* vs. *Albers & Runge,* " we have no

evidence that inquiries had been made into the extent of the assets of the assignors, or the extent of their liabilities, by inquiring into which alone could any judgment have been formed, or notice be attributed." Nor is there any other proof in this case bringing home to Jerome a knowledge of the insolvent condition of Thomas, sufficiently pregnant to overcome his direct and emphatic denial of such knowledge in his answer.

I am therefore of opinion, that the complainant is not entitled to relief, but there is quite enough in the cause to protect him against a decree for costs, and accordingly, in dismissing his bill, the parties respectively will be required to pay their own costs.

HENRY P. BROOKS and LEVIN GALE, for Complainants.
C. H. PITTS, for Respondents.

[An appeal was taken by the complainants, which is still pending.]