(Decided July 17th, 1866.)

GEORGE H. WILLIAMS, TRUSTEE OF H. POLLACK, *vs.* MOSES COHEN, ET AL.

DEED MADE IN CONTEMPLATION OF INSOLVENCY: ACTS AND DEEDS OF DEBTOR WHERE VOID OR VOIDABLE.—ART. 48, SEC. 7 OF THE CODE, is in the following words: "Any confession of judgment, and any conveyance or assignment made by any insolvent under this Article for the purpose of defrauding his creditors, or giving an undue preference, shall be void, and the property or thing conveyed or assigned shall vest in the trustee, and all acts done by a petitioner before his application, when he shall have had no reasonable expectation of being exempted from liability to execution, on account of his debts or responsibilities, without

Williams, trustee *vs*. Cohen, et al.

petitioning for the benefit of the insolvent laws, shall be deemed to be within the meaning and purview of this section." On an appeal from a decree dismissing a bill filed to set aside a deed of release as an undue preference within the meaning of the above Art. and section.—HELD:

1st. That this section, taken as a whole, unquestionably contemplates a class of cases in which the acts of an insolvent, before his application, cannot be avoided, notwithstanding his actual insolvency at the time the acts were done.

2nd. That the words "no reasonable expectation of being exempted," &c., clearly imply a knowledge or belief on the part of the insolvent of his inability to pay his debts; for without such knowledge or belief, he would necessarily be presumed to have a reasonable expectation of being exempted from execution, without applying for the benefit of the insolvent laws.

3rd. If, however, a conveyance of property is made by a debtor to a creditor to satisfy or secure a debt, at a time when the debtor knows or believes himself to be insolvent, and does not expect to be relieved from execution for his debts without the aid of the insolvent laws, the necessary presumption would be, that the conveyance was executed with a view of applying for the benefit of the insolvent laws; and in such a case the conveyance would be void within the meaning of this provision of the Code.

4th. That this section contemplates as void or voidable only such acts of a debtor in derogation of the rights of his creditors as may be done by him when he knows or believes himself to be insolvent, and has no reasonable expectation of exempting himself from execution, without the aid of the insolvent laws; or in other words, only such acts as the debtor may be presumed to have done in derogation of the rights of his creditors, with a view of applying for the benefit of the insolvent laws.

APPEAL from the Superior Court of Baltimore city, as a Court of Equity:

The object of the bill in this case was to set aside a deed or release of a bond of conveyance made, as is alleged, in contemplation of insolvency, by Pollack to Cohen, on the 26th of December, 1850. It states the purchase by Pollack of the defendant, Cohen, of a warehouse in Gay street in Baltimore city, for the sum of $8,000, of which $3,700 was paid, and $4,300 remained due; and that Pollack, with the

knowledge and co-operation of Cohen, expended $3,781.91 thereon in repairs, &c.; that Pollack being betrothed to the daughter of Cohen, the intercourse between them was so confidential, that the latter knew and was apprized of the in solvency of Pollack, and under the pretence of procuring a security for debts due to him from Pollack, for purchases of dry goods, obtained his signature to a release of the bond given to him by Cohen, obliging the latter to convey to him the property on full payment; that at the time of signing said release, Pollack was insolvent, and Cohen told him he could not "get through;" that no consideration then passed, and the recital thereof was false, and that said Cohen did not even give up the unpaid promissory notes which remained of those given for the purchase of the property; and further, that the release was obtained by the unbounded confidence which Pollack had in Cohen, and without his even reading it, and at a time when Pollack "had no reasonable expectation of being exempted from liability to execution on account of his debts or responsibilities, without petitioning for the benefit of the insolvent laws," and that Cohen knew it; and that the release is therefore void, and that the title to the property hath become vested in the complainant as trustee in insolvency.

The bill further states, that shortly after said release, Pollack failed, and he could not pay thirty cents on the dollar, and to dispose of the remnant of his goods to advantage, he sent them, with Cohen's knowledge and approbation, to Wheeling, when he, Cohen, attached them *in transitu* for a pretended balance of indebtedness, and so, in fact, possessed himself of all of Pollack's assets, to the exclusion of all other creditors, and that Pollack applied in insolvency, and the complainant was duly appointed his trustee. The prayer of the bill was, that the release should be declared void, the property sold, and that Cohen should receive no dividend until he should bring into account the proceeds of the attach-

ment. With the bill were filed as exhibits the bond of conveyance and its release designated respectively as Exhibits H. P., No. 1, and H. P., No. 2, and the insolvent and Cohen were made defendants.

The answer of Cohen insists, that the said property was bought by him for the insolvent, at his instance and request, for a place of business, but denies that the repairs and improvements alleged in the bill were made with his co-operation; it admits the betrothal, but avers that the property was re-purchased by him at the request of Pollack, because of the difficulty of collections, and to give him financial ease; that he agreed to buy the property at $10,000, or for $7,000 over and above the $3,000 due on the mortgage upon it, and which $7,000 was to be paid by crediting the balance due on the property, then by crediting notes of Pollack held by him, and the balance in payments as they might be needed; that all these were made, leaving unpaid and unsecured a considerable amount on open account for merchandise sold him; that he had not, until some time afterwards, any suspicion of the pecuniary insufficiency of said Pollack, and continued to sell to him without distrust; and for that reason the agreement of re-purchasing was not put in writing until the 26th of December, 1860, and after all the purchase money had been paid. He denies that at said time Pollack was insolvent, on the contrary, he avers that he expected him to be able to meet all his engagements, and he bought the property with that assurance. The answer, however, admits, that at the time of this transaction, the unpaid notes were not returned, but that they were not withheld from any fraudulent design, but were considered as extinguished.

That the price paid was a full price, and as much as any one would have given, and that he has since been obliged to pay two mechanic's liens thereon for $360. He denies that Pollack signed the release of the bond without reading it;

Williams, trustee, *vs.* Cohen, et al.

on the contrary, he avers that it was fully read and explained to him at the time of its execution and delivery; that in February, 1861, he found that Pollack required an extension, and though a creditor for $4,000, he would, from Pollack's representations, have given it, had other creditors assented; that he afterwards discovered these representations to be untrue, and he told him he had lost confidence in him, and would give him no further credit; that his daughter had determined to break the engagement, and he approved the determination, because of the loss of confidence; but not desiring to prosecute or annoy, he signed a composition paper, the agreement therefor being provisional, and others not signing, it "fell through;" that being in Pittsburg in May, 1861, he received a letter from his son, stating that Pollack was moving his goods, and that he believed they had been forwarded to Pittsburg, and on the basis of this information he attached, as he had a right to do, and that it is for the Court in Pittsburg to say whether the same was or not properly brought; and he puts the complainants to the proof as to the application in insolvency, of which he knows nothing.

· Pollack answers, admitting all the allegations of the bill.

A commission was issued, and before the commissioner the insolvency of Pollack was admitted, and the appointment of the complainant as trustee; also the assignment by Pollack of all surplus of his estate, who was then examined as a witness. He proved the purchase of the property, the amount expended on repairs and improvements, amounting, to $3,781.98 thereon, under Cohen's advice. He also proved his betrothal to Cohen's daughter, and that he was then worth about $6,000; that he afterwards became embarrassed, and gave Cohen a statement in writing of his affairs, and shewed him his books, prior to which Cohen had loaned him money; that at the time of said loans he gave Cohen, as security, the bond of conveyance for the property and the notes he had paid on account of the purchase; that about the end of De-

eember, 1860, Cohen gave him a statement of his indebtedness to him, amounting to $13,000, and he proposed to take the property at $10,000 as security, and give him a lease of five years on it, after which it was to be returned; that he, Pollack, was satisfied, and executed what he supposed to be such a paper, complainant's exhibit H. P., No. 2, without reading it; that this paper was already prepared at the office of Cohen's attorney, and from Cohen's statements, he, Pollack, supposed it a security, and was not aware he had signed a deed; that at the time of executing said paper, he owed $29,000, on which he then could not have paid fifty cents on the dollar; that Cohen was aware of his condition, and remarked, that he feared he could not get through, and at one time mentioned that he thought he was solvent. The following interrogatory was then propounded to the witness: "At the time of the execution of the said paper, the complainant's exhibit H. P., No. 2, had you any reasonable expectation of being exempted from liability to execution, on account of your debts or responsibilities, without petitioning for the benefit of the insolvent laws?" To which he replied, "I had none; I had no money to pay any liabilities, all that I had was invested in this property, (that conveyed in H. P., No. 2,) and in old stock, and old debts," &c.

The witness further proved, that Cohen retained the bond and the twenty-seven notes which were paid on account of the purchase; that the recital of the consideration in exhibit H. P., No. 2, is not true, and that nothing, at the time of the execution thereof, was delivered or tendered to him by said Cohen or any one else; that his inducement to execute it was, that he supposed it a security for money lent, and from the relationship existing between them, he supposed Cohen would extricate him from his difficulties; that the object of improving the property under Cohen's advice was, that he might also live there after he was married, and Cohen refused to consent to the marriage because of embarrass-

ments; and that his condition grew worse, and it ended in insolvency. On cross-examination he stated, that Cohen bought the property for him at his request.

*William Geahring,* book-keeper to Pollack, proved that Pollack was insolvent in August, 1860, and December, 1860; that Cohen, in October, 1860, examined Pollack's books and into his affairs; that the expenditures on the property were on account of the intended marriage, and made under Cohen's supervision; that Cohen sold Pollack trash as goods, and charged the highest prices for them; and that, and his confidence in Cohen, caused Pollack's insolvency; that he had often warned Pollack, but the acquaintance with the daughter induced the confidence. On cross-examination he stated, that in October, 1860, Cohen knew Pollack's assets better than Pollack himself; and that he, or a member of his family, examined the stock on hand every week.

*James M. Cunningham,* a witness produced by Cohen, proved that Pollack was insolvent in the summer and autumn of 1860; that he went into his service as clerk in February, 1860, and he thought him insolvent a very short time afterwards.

*James Hodges* proved, that on the 7th of February, 1861, Pollack's paper was sold at two per cent. a month, a heavy and extraordinary rate at that time.

A mass of other testimony was taken which becomes immaterial in consequence of this Court's considering in its decision the single question of Pollack's solvency or insolvency on the 26th of December, 1860, the date of the release of the bond of conveyance, exhibit H. P., No. 2.

The Court below, (MARTIN, J.,) dismissed the complainant's bill with costs, and filed the following opinion:

"It is apparent that there is to be found in the case no evidence of fraud, in fact, and a careful examination of the testimony has satisfied me, that the complainant has failed to establish the proposition that Herman Pollack, at the time

he executed the deed of release in question, had no reasonable expectation of being exempted from liability from execution on account of his debts or responsibilities, without petitioning for the benefit of the insolvent laws. As this proposition lies at the foundation of the case as presented by the complainant, and he has failed to establish it, the bill must be dismissed irrespective of various questions which were raised in the argument, and in reference to which it is not necessary to express an opinion."

From the decree dismissing the bill, the complainant appealed.

The cause was argued before Bowie, C. J., and Bartol, Cochran and Weisel, J.

*George H. Williams*, for the appellant, argued:

That there was but one question involved in the cause that was at all essential to its decision, and that was: Had Pollack, on the 26th of December, 1860, a reasonable expectation of being exempted from liability to execution on account of his debts or responsibilities, without petitioning for the benefit of the insolvent laws? ( See 1 *Code, Art.* 48, *sec.* 7, *p.* 345.) He contended, that to this question, from the evidence in the cause, there could be but one answer,—that he could have had no such expectation, and, therefore, the deed or release must be set aside as fraudulent and void. That where a deed is impeached for fraud, the party charged will not be allowed to prove any other consideration than that stated. *Union Bank vs. Gratz,* 1 *H. & G.,* 175.

*P. McLaughlin*, for the appellees, insisted:

1st. That as the transaction was consummated for more than one year before the filing by Pollack of his petition for the benefit of the insolvent laws, it cannot be impeached by

the trustee as an undue and improper preference. 1 *Vol. Code, Art.* 48, *sec.* 6, *p.* 45.

2nd. That as there is no evidence of fraud in fact, and as the deed is clearly good, and as there is no ground for denouncing it as an undue and improper preference, for the reason already stated, the complainant, as trustee, acquired no right whatever in the property embraced in said deed.

3rd. Even if the deed could be successfully assailed under the said 7th section of the Code, by establishing, as a matter of fact, that said Pollack, when he made said deed, had no reasonable expectation of being exempt from liability to execution on account of his debts or responsibilities, without petitioning, &c., yet there is no sufficient evidence to establish the fact.

The only evidence in support of this allegation is, that of the defendant, Herman Pollack, and he, to the best of his ability, endeavors to support this idea.

But Herman Pollack's testimony, even if it were not contradicted and entirely outweighed, is not admissible for the following reasons, viz:

1st. The objection to his competency, on the ground of interest, has not been satisfactorily removed.

2d. The objection, on the ground of policy, to so much of his testimony as seeks to impeach his own deed, exhibit H. P., No. 2.

3d. But apart from these exceptions, his answers to the interrogatories-in-chief are flatly contradicted, as we think we have shown, by his answers to the cross-interrogatories; his testimony is, therefore, *felo de se.*

4th. His accounts rendered, his representations to Mr. Cohen, his letters, all show that he was either himself deceived as to his true condition, or that he was willing to deceive other persons. He is, at least, a witness whose credibility is open to much suspicion.

5th. Besides all this, he had every reason to hope that his betrothal to the daughter of Mr. Cohen would be followed by marriage, and it was not until long after the deed was made that he had any reason to suppose that he would not be the accepted son-in-law of a man who was able to help him, and who, as shown by the testimony of Solomon Cohen, and indeed by his own evidence, had in various ways manifested his willingness to serve him, until he came to the conclusion that he was not a true man.

6th. There is no allegation of any fraud in fact, and the evidence shows that Mr. Cohen was a creditor for a large amount over and above the value of Pollack's interest in this property, and that the price allowed was the full value. Unless the deed can be successfully denounced as an undue preference to the creditor of the maker, it must be sustained as valid. But the evidence shows that the making of the deed was merely the consummation of an agreement made as early as October, 1860, and further, that on the basis of said agreement cash advances were subsequently made to the amount of upwards of $2,600, as shown by defendant's exhibit M. C., No. 3, leaving a large merchandise account unpaid, and leaving the lent note for $1,443.99, of Strauss, Hartman & Co., unprovided for. Surely, if the object had been, on either side, to give an undue and improper preference to Cohen as a creditor, the excess of the price above the liens on the land would have been applied in payment, *pro tanto*, of a larger amount of indebtedness than due and unsecured.

7th. "Liability to execution," if imprisonment for debt were not now abolished, would naturally be construed as referring to the person. But if, with the change of the law, we construe the word "execution" as referring to property, we must still give to the words "without petitioning," &c., their full and proper signification. It imports necessity, at

least apparent necessity, for resort to this measure of relief as the only resource. The condition of the party must be known to have been hopeless, or if he himself cherished hopes, the state of his affairs must be shown to have been such that no reasonable man in his condition, in view of all the surrounding circumstances, could have entertained any hope of extricating himself from execution, or that he, himself, could have had no reasonable expectation, which is all the same as saying that no sane man could have hoped for any other alternative.

COCHRAN, J., delivered the opinion of this Court.

This bill was filed for the purpose of setting aside a deed of surrender and release, executed by Herman Pollack to Moses Cohen, on the 26th of December, 1860, upon the alleged ground, that Pollack was then insolvent, and that the deed to Cohen, one of his creditors, was an undue preference within the meaning of sec. 7, Art. 48 of the Code. It is admitted that Pollack did not apply for the benefit of the insolvent laws until the 18th of February, 1862, about fourteen months after the date of the deed. There is no pretence that the deed was executed for an insufficient consideration, or that it was fraudulent in fact; and we have, therefore, to decide the simple question, whether it was executed by the grantor when he had " no reasonable expectation of being exempted from liability to execution on account of his debts without petitioning for the benefit of the insolvent laws."

The 7th section of Art. 48 of the Code, taken as a whole, unquestionably contemplated a class of cases in which the acts of an insolvent before his application cannot be avoided, notwithstanding his actual insolvency at the time the acts were done. It is not difficult to imagine a case where one, knowing himself to be insolvent, might, nevertheless, very reasonably conclude, from the state of his credit, the increas-

ing profits of his business, or enhancing value of his property, that he could protect himself from liability to execution and pay his debts in full. If in such a case as this, the debtor should part with a portion of his property to satisfy pressing claims, or should convey it to a creditor in satisfaction of an existing debt for the purpose of maintaining his credit, and enabling him to provide for the eventual payment of all his debts, without incurring liability to execution on account thereof, such a conveyance could not reasonably be said to fall within that class of acts declared to be void by this section. It would, in fact, be the case of one, who, notwithstanding his insolvency and subsequent application for the benefit of the insolvent laws, nevertheless, had a reasonable expectation of being exempted from liability to execution, and whose act could not be impeached as within the meaning of this provision. The terms "no reasonable expectation of being exempted, &c., clearly imply a knowledge or belief on the part of the insolvent of his inability to pay his debts, for, without such knowledge or belief, he would necessarily be presumed to have a reasonable expectation of being exempted from execution without applying for the benefit of the insolvent laws. If, however, a conveyance of property is made by a debtor to a creditor to satisfy or secure a debt at a time when the debtor knows or believes himself to be insolvent, and does not expect to be relieved from execution for his debts without the aid of the insolvent laws, the necessary presumption would be, that the conveyance was executed with a view of applying for the benefit of the insolvent laws; and, in such a case, the conveyance would be void within the meaning of this provision of the Code. Our conclusion is, that this section contemplates as void or voidable, only such acts of a debtor in derogation of the rights of his creditors as may be done by him when he knows or believes himself to be insolvent, and has no reasonable expectation of exempting himself from execution without the aid of the insolvent laws,

or expressing the same proposition in equivalent terms, only such acts as the debtor may be presumed to have done in derogation of the rights of his creditors, with a view of applying for the benefit of the insolvent laws.

The provision in question was codified from the Act of 1854, chap. 193, sec. 7, which in substance and effect is the same as the 6th sec. of the Act of 1816, chap. 221, and the construction given to it here corresponds with that given to the Act of 1816, in the cases of *Hickey vs. Farmers Bank*, 5 *G. & J.*, 377, *Crawford vs. Taylor*, 6 *G. & J.*, 323, and *Dulaney vs. Hoffman*, 7 *G. & J.*, 170.

It was, therefore, necessary for the appellant in making out a case, upon which this deed could be set aside, to show that Pollock not only knew, or supposed himself to be, insolvent at the date of the deed, but that the circumstances under which it was executed, were such that he could not reasonably have expected to pay his debts in full, or avoid liability to execution on their account otherwise than by means of the insolvent laws. This, in our opinion, the appellant has failed to do. The evidence of Pollock's condition at the date of the deed does not show that he then knew, or supposed himself to be, insolvent. The strongest evidence on that side of the case is that of Pollock, himself, who, upon his examination in July, 1862, says, that at the time the deed was executed he was in debt to the amount of about $29,000, and that he could not, at that time, have paid more than fifty cents in the dollar; but he does not say that he then knew he was unable to pay more. It is true that Geahring and Cunningham, his employees, both state that they thought him insolvent during the latter part of the year 1860; but Pollock testifies that shortly previous to, or in October, 1860, he believed himself to be worth about $6000; and the statements of his pecuniary condition, made up in August, 1860, and February, 1861, by the assistance of Geah-ring and Cunningham, neither of which were substantially

impeached or contradicted, show that he was solvent at both of these dates. Judging of his condition in December, 1860, by inferences from events subsequently occurring, it might be supposed that he was then insolvent; but the question of his insolvency at that time cannot properly be determined in that way. The evidence shows that the usual course of trade and business was much deranged during the first half of the year 1861, by the political troubles then commencing, and that commercial confidence, at all times a necessary condition of prosperous trade, gave place to general suspicion and distrust. How far this condition of things was the occasion of Pollock's suspension in May, 1861, does not clearly appear, but it is evident that his embarrassments were very much increased. But whether solvent or insolvent when the deed was executed, Pollock's own testimony shows that he then believed himself able to pay his debts in full. In the spring of 1861, some months after the date of the deed, he made an effort to obtain an extension of the time for payment of his debts, and he says that his idea then was that if Cohen had not forced payment of the claim due to him, and the troubles of the country had not increased, he could have gotten through his difficulties and paid every dollar of his liabilities. He also denies that he had any intention, or that he even expected at that time, to apply for the benefit of the insolvent laws.

Much of the testimony contained in the record has no material bearing upon the question to be decided, and it has not been noticed for that reason ; but that to which we have more particularly referred, was sufficient in our opinion to justify the conclusion reached by the Court below. It shows that the grantor, at the date of the deed, had an expectation of being exempted from execution for his debts, which, so far as we can see, was not unreasonable, and there is an entire absence of evidence to show that it was executed with a view

to his ultimate insolvency and release under the insolvent laws.

_Decree affirmed with_
_costs to the appellee._

(Decided July 17th 1866.)